### IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| SMA SURFACES, INC., | : |
| Plaintiff, | : |
| v. | : |
| UNITED STATES, | : Case No. 21-00399 |
| Defendant, | : |
| and | : |
| CAMBRIA COMPANY LLC, | : |
| Defendant-Intervenor. | : |

### **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

Erik D. Smithweiss*
Jordan C. Kahn
Michael S. Holton
Kavita Mohan

1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

\*\*\*

*707 Wilshire Boulevard, Suite 4150
Los Angeles, CA 90017-3720
(213) 624-1970

Dated: February 16, 2022

**TABLE OF CONTENTS**

STATEMENT PURSANT TO RULE 56.2 .................................................................................. 1

    A.    ADMINISTRATIVE DECISION UNDER APPEAL ..................................................................... 1

    B.    REASONS FOR CONTESTING THE ADMINISTRATIVE DECISION ........................................... 1

    C.    ISSUES PRESENTED AND SUMMARY OF ARGUMENT .......................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

STANDARD OF REVIEW ........................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

    A.    RECORD EVIDENCE DEMONSTRATES THAT SMA'S PRODUCTS MEET ALL FOUR CRITERIA FOR THE GLASS SURFACE PRODUCT EXCLUSION IN THE *QSP ORDERS* ....................... 7

    B.    THE DEPARTMENT'S DETERMINATION THAT SMA'S GLASS SURFACE PRODUCTS ARE WITHIN THE SCOPE OF THE ORDER IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH THE LAW AS IT IGNORES KEY RECORD EVIDENCE UNDER THE (K)(1) FACTORS .................................................................................................................. 11

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) ............... 7

*AMS Assocs. v. United States*, 737 F.3d 1338 (Fed. Cir. 2013) ....................................................... 7

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ........................................................................ 6

*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016) ..................................... 11

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) ....................................... 7, 12

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ................................ 6

*Star Pipe Prod. v. United States*, 365 F. Supp. 3d 1277 (Ct. Int'l Trade 2019) ........................... 12

*Star Pipe Prod. v. United States*, 537 F. Supp. 3d 1362 (Ct. Int'l Trade 2021) ..................... 12, 13

*United Steel & Fasteners, Inc. v. United States*, 203 F. Supp. 3d 1235 (Ct. Int'l Trade 2017) ...... 7

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ................................................................ 7

**Statutes**
19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................................................................... 6

**Regulations**
19 CFR 351.225(k)(1) .............................................................................................................. 11, 12

**Administrative Decisions**

*Certain Quartz Surface Products from the People's Republic of China: Antidumping and Countervailing Duty Orders,* 84 Fed. Reg. 33,053 (July 11, 2019) ................................... passim

Plaintiff, SMA Surfaces, Inc. (f/k/a Polarstone US) ("SMA") submits this Memorandum of Law to support its Rule 56.2 Motion for Judgment on the Agency Record.

### STATEMENT PURSANT TO RULE 56.2

A.  **ADMINISTRATIVE DECISION UNDER APPEAL**

SMA seeks judicial review of the U.S. Department of Commerce's (the "Department" or "Commerce") final scope ruling in the scope inquiry of the antidumping duty ("ADD") and countervailing duty ("CVD") Orders on Quartz Surface Products ("QSP") from the People's Republic of China ("China"), in which the Department found that certain surface products imported by SMA were included within the scope of the ADD and CVD Orders on QSP from China. The challenged determination, findings, and conclusions are set out in the Department's unpublished memorandum styled as Memorandum from Jill E. Pollack, Director, Office II, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: SMA Surfaces* ( July 15, 2021) ("Final Scope Ruling"). **PR 15**.

B.  **REASONS FOR CONTESTING THE ADMINISTRATIVE DECISION**

SMA's reasons for contesting the *Final Scope Ruling* are set forth in the Summary of Arguments below, and in more detail in the Argument section of this Memorandum.

C.  **ISSUES PRESENTED AND SUMMARY OF ARGUMENT**

**Was the Department's determination that surface products identified as "Grey Concrete Leather," "Andes," and "Twilight," in SMA's Scope Ruling Request were included within the scope of the Orders on QSP from China supported by substantial evidence and in accordance with the law?**

**No**. The sole issue on appeal in this case is whether the products identified in SMA's

1

scope request meet the fourth criterion of the crushed glass surface product exception to the scope, as the Department agreed in its *Final Scope Ruling* that SMA's products meet the first three criteria. SMA provided unrefuted, substantial evidence that its products should be excluded from the QSP Orders under any interpretation of this final factor. The Department did not issue any supplemental questionnaires. Its cursory analysis in the *Final Scope Ruling* did not address any of the record evidence or arguments made by SMA, and was therefore entirely unsupported by substantial evidence.

## STATEMENT OF FACTS

On July 11, 2019, the Department published ADD/CVD Orders on certain quartz surface products from the People's Republic of China. *Certain Quartz Surface Products from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 33,053 (July 11, 2019) ("QSP Orders"). The Department defined the scope of the *QSP Orders* as follows:

> The merchandise covered by the orders is certain quartz surface products.[1] Quartz surface products consist of slabs and other surfaces created from a mixture of materials that includes predominately silica (*e.g.*, quartz, quartz powder, cristobalite) as well as a resin binder (*e.g.*, an unsaturated polyester). The incorporation of other materials, including, but not limited to, pigments, cement, or other additives does not remove the merchandise from the scope of the orders. However, the scope of the orders only includes products where the silica content is greater than any other single material, by actual weight. Quartz surface products are typically sold as rectangular slabs with a total surface area of approximately 45 to 60 square feet and a nominal thickness of one, two, or three centimeters. However, the scope of these orders includes surface products of all other sizes, thicknesses, and shapes. In addition to slabs, the scope of these orders includes, but is not limited to, other surfaces such as countertops, backsplashes, vanity tops, bar tops, work tops, tabletops, flooring, wall

---

[1] Quartz surface products may also generally be referred to as engineered stone or quartz, artificial stone or quartz, agglomerated stone or quartz, synthetic stone or quartz, processed stone or quartz, manufactured stone or quartz, and Bretonstone®.

2

facing, shower surrounds, fire place surrounds, mantels, and tiles. Certain quartz surface products are covered by the orders whether polished or unpolished, cut or uncut, fabricated or not fabricated, cured or uncured, edged or not edged, finished or unfinished, thermoformed or not thermoformed, packaged or unpackaged, and regardless of the type of surface finish.

In addition, quartz surface products are covered by the orders whether or not they are imported attached to, or in conjunction with, non-subject merchandise such as sinks, sink bowls, vanities, cabinets, and furniture. If quartz surface products are imported attached to, or in conjunction with, such non-subject merchandise, only the quartz surface product is covered by the scope.

Subject merchandise includes material matching the above description that has been finished, packaged, or otherwise fabricated in a third country, including by cutting, polishing, curing, edging, thermoforming, attaching to, or packaging with another product, or any other finishing, packaging, or fabrication that would not otherwise remove the merchandise from the scope of the orders if performed in the country of manufacture of the quartz surface products.

The scope of the orders does not cover quarried stone surface products, such as granite, marble, soapstone, or quartzite.

**Specifically excluded from the scope of the orders are crushed glass surface products. Crushed glass surface products must meet each of the following criteria to qualify for this exclusion: (1) the crushed glass content is greater than any other single material, by actual weight; (2) there are pieces of crushed glass visible across the surface of the product; (3) at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide as measured at their widest cross-section (glass pieces); and (4) the distance between any single glass piece and the closest separate glass piece does not exceed three inches.**

The products subject to the scope are currently classified in the Harmonized Tariff Schedule of the United States (HTSUS) under the following subheading: 6810.99.0010. Subject merchandise may also enter under subheadings 6810.11.0010, 6810.11.0070, 6810.19.1200, 6810.19.1400, 6810.19.5000, 6810.91.0000, 6810.99.0080, 6815.99.4070, 2506.10.0010, 2506.10.0050, 2506.20.0010, 2506.20.0080, and 7016.90.10. The HTSUS subheadings set forth above are provided for

    convenience and U.S. Customs purposes only. The written description of
    the scope is dispositive.[2]

  The specific exclusion for crushed glass surface products arose out of a modification to the scope that occurred during the original investigation itself, based upon a request made by Petitioner Cambria Company LLC ("Petitioner" or "Cambria").[3]

  On April 28, 2021, Plaintiff requested that the Department issue a scope ruling confirming that three specific surface products identified as "Grey Concrete Leather," "Andes," and "Twilight" are excluded from the scope of the *QSP Orders* based on satisfaction of the four crushed glass surface products exclusion criteria contained in the scope.[4] Plaintiff's *Scope Ruling Request* provided factual and documented evidence that detailed how each of the three specific surface products were uniquely and separately excluded under the four criteria of the crushed glass surface products exclusion contained in the scope of the *QSP Orders*.[5] Specifically, with regard to the first factor, SMA demonstrated that the crushed glass content of each of the three surface products at issue was greater than any other single material by weight by providing composition sheets and an analytical report on a representative production sample. SMA also

---

[2] *QSP Orders*, 84 Fed. Reg. at 33,055-56 (emphasis added).

[3] *See* Memorandum to: Gary Taverman, DAS for AD/CVD Operations, from Melissa G. Skinner, Director for Office II AD/CVD Operations Re: Certain Quartz Surface Products from the People's Republic of China: Scope Modification Determination (May 14, 2019) ("Scope Modification Determination"). **CR 1, PR 1** at Exhibit 2. *See also* Petitioner's Letter, "Certain Quartz Surface products from the People's Republic of China: Request for Scope Clarification," (March 1, 2019) ("Scope Clarification Request"). **CR 1, PR 1** at Exhibit 3.

[4] Letter from SMA to the Department of Commerce Re: Antidumping Duty Order on Certain Quartz Surface Products from the People's Republic of China: Scope Ruling Request (Apr. 28, 2021) ("Scope Ruling Request"). **CR 1-2**, **PR 1-2**.

[5] *Id.*

provided information demonstrating that Customs and Border Protection ("CBP" or "Customs") classified SMA's products under HTSUS 7020.00.6000, "Other articles of glass: Other."[6]

Regarding the second factor, SMA demonstrated that the products at issue contain crushed glass that is visible across the surface by providing photographs showing the cubed and cone crushed glass pieces used in production, and a letter providing the expert opinion of a technical expert on stone surfaces.[7]

On the third factor, SMA provided photographs with measurements, demonstrating that at least some of the individual pieces of crushed glass were larger than one centimeter wide at their widest cross-section.[8]

The final factor in the crushed glass exclusion of the scope requires that "the distance between *any single* glass piece and the closest separate glass piece does not exceed three inches" (emphasis added). SMA argued in its *Scope Ruling Request* that this factor was also satisfied for all three products because "the visible *Scope Ruling Request* glass pieces that are 0.2 to 0.3 microns are all adjacent and necessarily within 3 inches of each other" and "nothing in the language of the 4th criteria that defines the specific type of glass piece."[9] SMA also provided unrefuted evidence that its products should be excluded from the *QSP Orders* under any interpretation of the final factor, as all of the pieces larger than one centimeter were within three inches of another piece that was one centimeter or larger. On May 14, 2021, Petitioner filed comments, without submitting factual or document evidence, opposing Plaintiff's request. **PR 3**.

---

[6] *Scope Ruling Request* at 8-9 and Exhibits 4-7.

[7] *Id*. at 9-10 and Exhibits 9-11.

[8] *Id*. at 10-11 and Exhibits 14-16.

[9] *Id*. at 11.

On May 18, 2021, the Department extended its 45-day deadline for issuing a decision on the *Scope Ruling Request* to July 27, 2021. **PR 4**. On July 15, 2021, the Department issued its *Final Scope Ruling* without issuing any additional questions to Plaintiff. **PR 15**. The Department's ruling found that the three specific surface products, "Grey Concrete Leather," "Andes," and "Twilight," each met the first three criteria of the crushed glass scope exclusion.[10] Specifically, the Department explained:

> Here, SMA Surfaces has provided record evidence demonstrating that its glass surface products are predominantly glass. The photographs SMA Surfaces submitted indicate that there are small pieces of glass scattered across the surface of its products and that the products contain some one centimeter "glass pieces," as defined by the crushed glass scope exclusion language.[11]

However, the Department's ruling found that the three specific products did not meet the fourth criterion of the crushed glass scope exclusion based on the Department's erroneous conclusion that "not all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece' across the surface of the product."[12]

## STANDARD OF REVIEW

This Court must hold unlawful any aspect of Commerce's decision-making that is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938); *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

---

[10] *Final Scope Ruling* at 5-6.

[11] *Id*. at 5.

[12] *Id*. at 6.

Substantial evidence requires more than mere assertion of "evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quotation omitted). Rather "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

"Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the Department's determination unsupported by substantial evidence."[13] "An agency's interpretation of its own regulations is given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation,' based on indications of intent at the time of the regulation's promulgation."[14] "It is a familiar rule of administrative law that an agency must abide by its own regulations."[15]

## ARGUMENT

### A. RECORD EVIDENCE DEMONSTRATES THAT SMA'S PRODUCTS MEET ALL FOUR CRITERIA FOR THE GLASS SURFACE PRODUCT EXCLUSION IN THE *QSP ORDERS*

The Department correctly found that SMA's glass surface products meet the first three factors of the crushed glass surface product exclusion.[16] Thus, the sole issue on appeal concerns the Department's determination that SMA's products *do not* meet the fourth factor. Substantial

---

[13] *Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000).

[14] *United Steel & Fasteners, Inc. v. United States*, 203 F. Supp. 3d 1235, 1249 (Ct. Int'l Trade 2017) (internal citation omitted).

[15] *AMS Assocs. v. United States*, 737 F.3d 1338, 1343 (Fed. Cir. 2013).

[16] *See Final Scope Ruling* at 5.

7

record evidence provided by SMA in its *Scope Ruling Request* demonstrates that SMA's products meet the standard set forth in the fourth factor, in addition to the first three.

As an initial matter, as SMA explained in its *Scope Ruling Request*, even if the Department were to ignore the plain language of the scope and take the narrowest reading of the exclusionary language (as it did in its *Final Scope Ruling*) to find that "glass piece" in the fourth factor means a one-centimeter wide glass piece, then SMA's products should still be excluded from the *QSP Order*. In particular, the "Twilight" product meets any interpretation of the Department's fourth factor because it has pieces of glass larger than 1 cm across its surface, and these 1 cm glass pieces are ***all*** within 3 inches of another 1 cm or larger glass piece.[17] As discussed below, the Department never addressed this unrefuted record evidence in its *Final Scope Ruling*, nor did it issue any supplemental questionnaires if it doubted that this was true.

Similarly, the large glass chip pieces (which exceed one to two centimeters) that are used in the production of the "Grey Concrete Leather" and "Andes" are visible on the surface, and all of these large glass chip pieces are not separated by more than three inches from the next large glass chip piece.[18]

However, it is SMA's position that a plain reading of the scope compels the conclusion that the plain language of "any single glass piece" in the scope cannot be limited to mean a glass piece larger than one centimeter. There is nothing in the fourth factor that defines "glass piece" or limits this term to glass pieces larger than one centimeter. As SMA explained in the *Scope Ruling Request*, "{i}n contrast, the 3rd criteria language provided that only 'some' of the glass pieces exceed one cm. Consequently, 'any' cannot mean 'some' based on the construction of the

---

[17] *Scope Ruling Request* at Exhibit 16.

[18] *Id*. at Exhibits 14 and 15.

scope. If the 4th criteria were applicable to only the pieces that were 'one cm or larger,' then the scope language should have stated it as such."[19]

In its *Scope Ruling Request*, SMA explained that the visible glass pieces in its "Grey Concrete Leather," "Andes," and "Twilight" products that are 0.2 to 0.3 microns[20] are all adjacent and necessarily within three inches of each other, and as a consequence all three products are excluded from the *QSP Order*.[21]

Significantly, as SMA noted in its *Scope Ruling Request*, none of the examples in Petitioner's original *Scope Clarification Request* "provide any evidence that the distance between the 'glass pieces larger than one cm' and the closest separate 'glass pieces larger than one cm' do not exceed three inches. In fact, the only evidence in the *Scope Clarification Request* is that '*some*' of the individual glass pieces are larger than one cm, and '*any* single glass piece and the closest separate glass piece does not exceed three inches.'"[22]

SMA corroborated its arguments by providing a side-by-side comparison between a sample of a product manufactured by IceStone, LLC ("IceStone"), which was cited by Petitioner in the *Scope Clarification Request* as an example of a product that the exclusion was intended to cover,[23] and SMA's "Twilight" (5"x10") sample product.[24]

---

[19] *Id*. at 11-12.

[20] As established by Exhibit 11 of the *Scope Ruling Request* (**CR 2**, **PR 2**), a piece of crushed glass larger than 0.2 microns is visible to the naked eye.

[21] *See Scope Ruling Request* at 11-12.

[22] *Id*. at 12 (emphases in original).

[23] *Id*. at Exhibit 3 (Petitioner cited to IceStone's products in the *Scope Clarification Request* at Exhibit 2).

[24] *Id*. at 12 and Exhibit 17.

9



This side-by-side comparison conclusively demonstrates that there is no meaningful difference between products cited by Petitioner in the *Scope Clarification Request*, and the products subject to the *Scope Ruling Request*. If anything, the size of the glass pieces is larger in "Twilight" than in the IceStone product. In addition, a comparison of "Grey Concrete Leather" and "Andes" with the IceStone sample clearly shows that these products have visible glass chip pieces much larger than the IceStone, but due to the chips opaque nature provide a different aesthetic look than IceStone's product or "Twilight."[25]

---

[25] *Id*. at 12.

**B.        THE DEPARTMENT'S DETERMINATION THAT SMA'S GLASS SURFACE PRODUCTS ARE WITHIN THE SCOPE OF THE ORDER IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH THE LAW AS IT IGNORES KEY RECORD EVIDENCE UNDER THE (K)(1) FACTORS**

Despite this substantial record evidence that SMA's products meet the fourth factor of the exclusion for crushed glass surface products, the Department simply found that "not all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece' across the surface of the product."[26] The Department did not address any of SMA's record evidence demonstrating that the products meet the narrowest reading of the exclusionary language. Nor did it issue any supplemental questionnaires prior to the *Final Scope Ruling* if it doubted this unrefuted record evidence. Furthermore, the Department also did not address any of the arguments concerning the construction and interpretation of the plain language of the scope.

Although the Department claimed that it purportedly "examined the other information enumerated under 19 CFR 351.225(k)(1), including the description of the merchandise contained in the Petitions, the record from the investigations, the final report of the International Trade Commission, as well as prior scope rulings,"  the Department provided no analysis of these documents and ignored key record evidence from the record of the investigation provided by SMA – namely, that the examples provided in Petitioner's *Scope Clarification Request* were materially indistinguishable from SMA's products with regard to fourth factor, as discussed above, and by Commerce's own scope language interpretation met the fourth factor.

It is axiomatic that the Department may not simply disregard record evidence that detracts from its intended conclusion. *See, e.g., CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) ("The substantiality of evidence must take into account whatever in

---

[26] *Final Scope Ruling* at 6.

the record fairly detracts from its weight."), quoting *Gerald Metals*, 132 F.3d at 720. For example, in the on-going *Star Pipe* scope litigation involving the ADD order on non-malleable cast iron pipe fittings from China, the Court issued three remands to the Department for failing to comply with its own regulations and because it gave insufficient consideration to record evidence involving the factors enumerated in 19 C.F.R. § 351.225(k)(1) ("(k)(1)" factors).[27] In *Star Pipe I*, the Court explained:

> the Department's regulation contemplates that Commerce will give thorough and fair consideration to "{t}he descriptions of the merchandise contained in the petition ... and the determinations of the ... Commission," 19 C.F.R. § 351.225(k)(1), in deciding whether certain merchandise is within the scope of an order. Commerce failed to do so here. ***It did not consider the petition, and its analysis of the ITC Report was so selective and cursory as to ignore a substantial amount of information relevant to the scope question presented in this case***. Commerce must correct these deficiencies in responding to this Opinion and Order.[28]

As in the *Star Pipe* litigation, in this case, "Commerce failed to address, or address in any meaningful way, certain evidence on the record that detracts from its ultimate conclusion."[29] The information that SMA provided from the *Scope Clarification Request*, which demonstrated that SMA's products were materially similar to Petitioner's "IceStone" example, was a key part of

---

[27] On September 20, 2021, the Department published a Final Rule that modified the existing scope regulations. However, those changes went into effect for requests filed on or after November 4, 2021, and therefore do not apply to these proceedings. The version of the regulations in effect when this scope ruling was issued provided that Commerce must "take into account ... {t}he descriptions of the merchandise contained in the petition, ***the initial investigation***, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1) (emphasis added).

[28] *Star Pipe Prod. v. United States*, 365 F. Supp. 3d 1277, 1286 (Ct. Int'l Trade 2019) ("Star Pipe I") (emphasis added).

[29] *Star Pipe Prod. v. United States*, 537 F. Supp. 3d 1362, 1380 (Ct. Int'l Trade 2021) ("Star Pipe III").

the original investigation, one of the (k)(1) factors that Commerce was required, but failed, to consider.

The only thing that Commerce cited to in its Determination was its prior scope determination in the *Panmin Scope Ruling*.[30] However, to SMA's knowledge, that decision was never appealed, and therefore the Court has not opined on whether the *Panmin Scope Ruling* is supported by substantial evidence. Furthermore, the Department provided no analysis comparing the products at issue in the *Panmin Scope Ruling* and provided no record evidence demonstrating that the products at issue in that case were comparable to the products at issue in this case. Significantly, as noted above, the Department also did not issue a single supplemental questionnaire to SMA to further investigate whether there were any such similarities. As discussed above, the Department's cursory reference to the *Panmin Scope Ruling* also did not consider the fact that SMA's products meet the exclusionary language of the fourth factor even in its narrowest reading.

In short, the Department entirely failed to "address in any meaningful way, certain evidence on the record that detracts from its ultimate conclusion."[31]

## CONCLUSION

For the reasons discussed above, SMA requests that this Court hold that the Department's *Final Scope Ruling* is unsupported by substantial evidence and otherwise not in accordance with law, and remand the Final Results with instructions to issue a new determination that is

---

[30] Memorandum, "Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: Request by Deyuan Panmin International Limited and Xiamen Deyuan Panmin Trading Co., Ltd." (February 20, 2020) ("Panmin Scope Ruling").

[31] *Star Pipe III*, 537 F. Supp. 3d 1380.

consistent with the Court's decision.

        Respectfully submitted,

        GRUNFELD, DESIDERIO, LEBOWITZ
        SILVERMAN & KLESTADT LLP

        */s/ Erik D. Smithweiss*
        Erik D. Smithweiss*
        Jordan C. Kahn
        Michael S. Holton
        Kavita Mohan

        1201 New York Ave., NW, Suite 650
        Washington, DC 20005
        (202) 783-6881

        ***

        *707 Wilshire Boulevard, Suite 4150
        Los Angeles, CA 90017-3720
        (213) 624-1970

Dated:  February 16, 2022

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for SMA Surfaces, Inc. Memorandum of Law In Support of its 56.2 Motion, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2013, is 3,788 words, less than the 14,000 word limit.

/s/ Kavita Mohan
Kavita Mohan

*Counsel for Plaintiff SMA Surfaces, Inc. (f/k/a Polarstone US)*

Dated: February 16, 2022