**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

—————————————————————————x
:
SMA SURFACES, INC.,                            :
:
Plaintiff,                  :
:
v.                            :
:
UNITED STATES,                                  :          Case No. 21-00399
:
Defendant,               :
:
and                        :
:
CAMBRIA COMPANY LLC,                  :
:
Defendant-Intervenor.          :
—————————————————————————x

## PLAINTIFF'S REPLY BRIEF

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

Erik D. Smithweiss*
Michael S. Holton
Kavita Mohan

1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

***

*707 Wilshire Boulevard, Suite 4150
Los Angeles, CA 90017-3720
(213) 624-1970

Dated: July 8, 2022

# TABLE OF CONTENTS

**I.   THE DEPARTMENT'S FINAL SCOPE RULING WAS ENTIRELY UNSUPPORTED BY SUBSTANTIAL EVIDENCE**.......................................................... 2

A.   THE DEPARTMENT'S DETERMINATION IN THE *FINAL SCOPE RULING* THAT SMA'S GLASS SURFACE PRODUCTS ARE WITHIN THE PLAIN LANGUAGE OF THE SCOPE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE.................................................... 4

1.   The Department Did Not Consider Substantial Evidence Placed On The Record By SMA That SMA's Glass Surface Products Meet The Exclusionary Language Of The Scope ........................................................................................................... 4

2.   The Government's and Cambria's *Post Hoc* Rationalizations And Arguments Raised In The First Instance Before The Court Should Be Rejected.................................... 6

3.   The Government's and Cambria's Arguments Concerning The Definition Of "Glass Pieces" In the Glass Surface Products Exception Should Be Rejected By The Court ...................................................................................................................... 8

4.   The Court Should Reject The Government's And Cambria's Arguments Regarding SMA's One Centimeter or Larger Glass Pieces....................................... 11

B.   THE DEPARTMENT'S K(1) ANALYSIS WAS ENTIRELY UNSUPPORTED BY SUBSTANTIAL EVIDENCE ...................................................................................... 16

1.   The Department Did Not Adequately Consider Evidence From The Original Investigation ........................................................................................................... 16

2.   The *Panmin Scope Ruling* Is Not Directly Applicable To This Case.......................... 21

**II.   CONCLUSION** ....................................................................................... **22**

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. U.S. Sec'y of Lab.*, 3 C.I.T. 54 (1982) .............................................................. 3

*Allegheny Ludlum Corp. v. United States*, 116 F.Supp.2d 1276 (2000) ......................................... 3

*American Textile Manufacturers Inst. v. Donovan*, 452 U.S. 490 (1981) ..................................... 3

*Atcor, Inc. v. United States*, 658 F. Supp. 295 (Ct. Int'l Trade 1987) ............................................ 3

*Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017) ......................................... 7

*Burlington Truck Lines v. United States*, 371 U.S. 156  (1962) ..................................................... 3

*DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ................. 3, 7

*Duferco Steel, Inc. v. United States,* 296 F.3d 1087 (Fed. Cir. 2002) ........................................... 9

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) ........................................ 2, 5

*M.S. Int'l, Inc. v. United States*, Memorandum and Order at 6 (Ct. Int'l Trade Feb. 12, 2021)... 20

*Mid Continent Nail Corp. v. United States*, 725 F. 3d 1295 (Fed. Cir. 2013) ................................ 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).. 3, 13

*Navigator Co., S.A. v. United States*, 463 F. Supp. 3d 1302 (Ct. Int'l Trade 2020) ................. 7, 11

*SEC v. Chenery*, 332 U.S. 194 (1947) ........................................................................................... 3

*Star Pipe Prod. v. United States*, 365 F. Supp. 3d 1277 (Ct. Int'l Trade 2019) .............. 17, 18, 19

*Star Pipe Prod. v. United States*, 463 F. Supp. 3d 1366 (Ct. Int'l Trade 2020) .................... 21, 22

*Star Pipe Prod. v. United States*, 537 F. Supp. 3d 1362 (Ct. Int'l Trade 2021) .......................... 17

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .............................................................. 2

**Statutes**

19 U.S.C. § 1677m(d) ..................................................................................................................... 6

19 U.S.C. § 1677m(f) ...................................................................................................................... 6

28 U.S.C. § 2637(d) .................................................................................................................. 7, 11

**Regulations**

19 CFR 351.225(k)(1) ............................................................................................................ passim

**Administrative Decisions**

*Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: Request by Diyuan Panmin International Limited and Xiamen Deyuan Panmin Trding Co., Ltd*. (February 20, 2020)............ 9, 17, 21, 22

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

_____x
                                          :

SMA SURFACES, INC.,                  :
                                          :

               Plaintiff,          :
                                          :

    v.                               :
                                          :

UNITED STATES,                 :      Case No. 21-00399
                                          :

             Defendant,      :
                                          :

             and               :
                                          :

CAMBRIA COMPANY LLC,      :
                                          :

           Defendant-Intervenor.   :
_____x

**<u>PLAINTIFF'S REPLY BRIEF</u>**

Plaintiff, SMA Surfaces, Inc. (f/k/a Polarstone US) ("SMA") hereby submits this Reply

Brief responding to the briefs filed by the Government and Defendant-Intervenor Cambria

Company LLC ("Cambria" or "Petitioner").[1] As laid out in further detail below, the U.S.

Department of Commerce's (the "Department" or "Commerce") final scope ruling in the scope

inquiry of the antidumping duty ("ADD") and countervailing duty ("CVD") Orders on Quartz

Surface Products ("QSP") from the People's Republic of China ("China"), in which the

Department found that certain surface products imported by SMA were included within the

scope of the ADD and CVD Orders on QSP from China,[2] is unsupported by substantial evidence

---

[1] The Government's brief is referred to as "Gov. Br." and Cambria's brief is referred to as "Pet. Br."

[2] _Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: SMA Surfaces_ (July 15, 2021) ("Final Scope Ruling") (**PR 15**).

1

and not in accordance with the law.

As explained in SMA's Memorandum of Law In Support of its 56.2 Motion ("SMA Br."), the sole issue on appeal in this case is whether the products identified in SMA's scope request meet the fourth criterion of the crushed glass surface product exception to the scope, since the Department agreed in its *Final Scope Ruling* that SMA's products meet the first three criteria.[3] SMA provided substantial evidence that its products should be excluded from the QSP Orders under any interpretation of this final factor. This evidence was never questioned by the Department and Cambria's sole submission contained no documentation or rebuttal factual information. The Department's cursory analysis in the *Final Scope Ruling* did not address any of the record evidence or arguments made by SMA and was therefore entirely unsupported by substantial evidence. The Government's and Cambria's arguments to the contrary are meritless and largely consist of impermissible *post hoc* rationalizations that must be rejected.

I.      **THE DEPARTMENT'S FINAL SCOPE RULING WAS ENTIRELY UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

"{T}he substantial evidence standard **requires more than mere assertion of 'evidence which in and of itself justified {the Commission's determination}**, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.' . . . Rather '{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (emphasis added), quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951).

Moreover, it is a basic tenet of administrative law that "courts may not accept appellate counsel's *post hoc* rationalizations for agency action" and that "an agency's action must be

---

[3] *Id*. at 5; *see also* Gov. Br. at 11 ("Commerce found, and no party disputes, that SMA's quartz surface products meet the first three criteria in the scope exclusion.").

upheld, if at all, on the basis articulated by the agency itself." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983), *citing Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962), *SEC v. Chenery*, 332 U.S. 194, 196 (1947); *American Textile Manufacturers Inst. v. Donovan*, 452 U.S. 490, 539 (1981). Likewise, this Court has held that "it is not the court's role to attempt to discern in the first instance what distinguishes the factors of this case nor to accept *post hoc* rationalizations of the agency's analysis." *DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340, 1357 (Ct. Int'l Trade 2020); *see also, e.g., Allegheny Ludlum Corp. v. United States*, 116 F.Supp.2d 1276, 1299 n. 41 (2000) ("{T}he court declines to let Defendant's counsel read into the Final Determination a rationale not advanced by the commissioners themselves.").

Finally, "{i}t is well settled that judicial review of administrative action is based upon the administrative record, and that the reviewing court may not receive new evidence." *Abbott v. U.S. Sec'y of Lab.*, 3 C.I.T. 54, 55 (1982); *see also Atcor, Inc. v. United States*, 658 F. Supp. 295, 300 (Ct. Int'l Trade 1987) ("In reviewing agency action, the Court must base its decision upon the administrative record. New evidence may not be received.").

The Government and Defendant-Intervenor raise multiple arguments attempting to justify the Department's rationale in its *Final Scope Ruling*. However, regardless of the arguments the Government and Cambria now raise on appeal, the Court must consider whether the Department's own articulation of its determination in the *Final Scope Ruling* was supported by substantial evidence. The Government nor Cambria may not now justify the *Final Scope Ruling* with arguments or assertions not raised during the administrative proceeding. Nor can the Government simply adopt arguments advanced by Petitioner as a basis for its determination when such arguments were never articulated or even considered by the Department in its *Final*

3

*Scope Ruling.*

**A.   THE DEPARTMENT'S DETERMINATION IN THE *FINAL SCOPE RULING* THAT SMA'S GLASS SURFACE PRODUCTS ARE WITHIN THE PLAIN LANGUAGE OF THE SCOPE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

**1.   The Department Did Not Consider Substantial Evidence Placed On The Record By SMA That SMA's Glass Surface Products Meet The Exclusionary Language Of The Scope**

In the *Final Scope Ruling*, the Department provided a cursory and conclusory assertion that SMA's glass surface products are not covered by the fourth criteria for the glass surface product exclusion. The Department stated only that "an examination of the pictures of the three glass surface products shows that they do not meet the crushed glass scope exclusion, because not all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece' across the surface of the product." *Final Scope Ruling* at 6. This single sentence accounted for the Department's entire "analysis" of all the arguments and evidence SMA provided regarding whether the fourth factor under the exclusion applies to SMA's products. The Department provided no further explanation beyond this one sentence or examples of how or why the photographs failed to demonstrate that the glass pieces were not within three inches of other glass pieces.

This is notable because it is SMA's position that the photographs and information provided by SMA demonstrate just the opposite. Specifically, SMA argued that even under the narrowest reading of the term "glass piece," (*i.e.*, defining "glass piece" as one-centimeter-wide glass piece), SMA's products meet the fourth criterion of the glass scope exclusion. The Twilight product in particular meets any interpretation of the Department's fourth factor because it very evidently has pieces of glass larger than 1 cm across its surface, and these 1 cm glass pieces are

*all* within 3 inches of another 1 cm or larger glass piece.[4] Similarly, the large glass chip pieces (which exceed one to two centimeters) that are used in the production of the "Grey Concrete Leather" and "Andes" are visible on the surface, and all of these large glass chip pieces are not separated by more than three inches from the next large glass chip piece. In its Scope Ruling Request, SMA provided multiple photographs of all three products demonstrating that the glass pieces greater than 1 cm were in fact within 3 inches of another 1cm or larger glass piece. The Department never addressed this argument or record evidence in its *Final Scope Ruling*. It did not address the images or measurements provided for each of the products, and rather made an inaccurate blanket assertion for all three products. Even if the Department disagreed or interpreted the photographs in a different manner, the substantial evidence standard requires more than "mere assertion" and necessitates that the Department address "contradictory evidence or evidence from which conflicting inferences could be drawn." *Gerald Metals*, 132 F.3d at 720 (internal citations omitted).

The Department also did not address any of the arguments concerning the construction and interpretation of the plain language of the scope. Specifically, a plain reading of the scope compels the conclusion that the plain language of "any single glass piece" in the scope cannot be limited to mean a glass piece larger than one centimeter. There is nothing in the fourth factor that defines "glass piece" or limits this term to glass pieces larger than one centimeter. As SMA explained in the *Scope Ruling Request*, "{i}n contrast, the 3rd criteria language provided that only 'some' of the glass pieces exceed one cm. Consequently, 'any' cannot mean 'some' based on the construction of the scope. If the 4th criteria were applicable to only the pieces that were

---

[4] *Scope Ruling Request* at 11-15, Exhibits 14-16.

'one cm or larger,' then the scope language should have stated it as such."[5]

In its *Scope Ruling Request*, SMA explained that under this reading, the visible glass pieces in its "Grey Concrete Leather," "Andes," and "Twilight" products that are all adjacent and necessarily within three inches of each other, and as a consequence all three products are excluded from the *QSP Order*.[6] SMA even placed an expert report on the record, in which an expert observed the glass or quartz grit size of SMA's products "is recognizable to the naked eye."[7] None of these arguments or record evidence was discussed or considered by the Department.

Finally, as SMA noted in its direct brief, if the Department found this information deficient in some manner, it should have solicited additional information from SMA.[8] If it had done so and SMA still was not able to provide a satisfactory response, then its failure to consider such information might have been justified. The Department may not, however, simply ignore evidence it does not wish to address.

**2.   The Government's and Cambria's *Post Hoc* Rationalizations And Arguments Raised In The First Instance Before The Court Should Be Rejected**

Given the Department's total failure to address any arguments or record evidence submitted by SMA relating to the fourth criterion of the glass surface product exclusion in the

---

[5] *Id*. at 11-12.

[6] *See Scope Ruling Request* at 11-12.

[7] *Id*. at Exh. 11.

[8] *Cf*. 19 U.S.C. § 1677m(d). While 19 U.S.C. § 1677m(d) relates to responses to requests for information, this administrative principle applies also in the first instance of a scope request, in which a party submits information for the Department's consideration. *See also* 19 U.S.C. § 1677m(f) ("If the administering authority or the Commission declines to accept into the record any information submitted in an investigation or review under this subtitle, it shall, to the extent practicable, provide to the person submitting the information a written explanation of the reasons for not accepting the information.").

*Final Scope Ruling*, and the fact that the Department's "analysis" on whether the fourth criterion applied was limited to a one sentence conclusion after purportedly looking at the photographs submitted by SMA (but providing no insight into why the photographs failed to support SMA's argument, or any other meaningful analysis), the arguments raised now on appeal by the Government or Cambria are largely impermissible, and must be rejected.

The Government's brief is comprised almost entirely of *post hoc* rationalizations arguments that were not articulated by the Department in the Final Scope Ruling, and may not be raised in the first instance before this Court.[9] Nor is the Government permitted to simply adopt arguments that may have been made by Cambria, but that were not articulated by the Department as a basis for its decision in the *Final Scope Ruling*.

This is particularly the case because many of Cambria's arguments before the Department were entirely speculative and not based upon any rebuttal factual information or record evidence, such as expert reports or specifications, and also because Cambria has raised new arguments before the Court, which were never raised in the underlying administrative proceeding. Petitioners are not exempt from the Court's requirement to exhaust administrative remedies. "{T}he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d); *see also, e.g., Navigator Co., S.A. v. United States*, 463 F. Supp. 3d 1302, 1307 (Ct. Int'l Trade 2020) ("Petitioners had the opportunity to present this argument to Commerce and failed to do so. Accordingly, Petitioners failed to exhaust their administrative remedies."); *Boomerang Tube LLC v. United States*, 856 F.3d 908, 913 (Fed. Cir. 2017) ("Because Boomerang and U.S. Steel failed to exhaust administrative

---

[9] *See DAK Americas LLC*, 456 F. Supp. 3d at 1357 ("it is not the court's role to attempt to discern in the first instance what distinguishes the factors of this case nor to accept post hoc rationalizations of the agency's analysis.").

remedies before Commerce, the Trade Court should have dismissed this appeal without reaching the merits. Its failure to do so was an abuse of discretion.").

Because the arguments raised by the Government and Cambria in their Response Briefs did not form the basis of the Department's decision in the *Final Scope Ruling*, they should be rejected in full and this case should be remanded to the Department to more fully analyze the arguments and evidence placed on the record by SMA. Nonetheless, SMA addresses each of the Government's and Cambria's arguments concerning the applicability of the fourth criterion below.

   **3.   The Government's and Cambria's Arguments Concerning The Definition Of "Glass Pieces" In the Glass Surface Products Exception Should Be Rejected By The Court**

Both the Government and Cambria argue in their briefs before the Court that the plain language of the scope defines and limits the term "glass pieces" to pieces wider than one centimeter. Pet. Br. at 12; Gov. Br. at 13. They argue that the third criterion sets-up a width requirement for "glass pieces" and that the inclusion of the words "glass pieces" in parentheses is used to "connote a defined term" that works in tandem with the fourth factor's distance requirement. *Id*. The Government further states that based on this interpretation, contrary to SMA's argument, there is no conflict in the scope language between the third criterion's reference to "some" glass pieces and the fourth criterion's reference to "any" single glass piece.

As noted above, in the *Final Scope Ruling*, the Department entirely failed to articulate its reasoning on any of the points it is now raising before the Court, despite the fact that SMA made the same arguments concerning the construction of the scope language in its *Scope Ruling Request*. In the *Final Scope Ruling*, the Department merely referenced the *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: Request by Diyuan Panmin International Limited and Xiamen Deyuan*

8

*Panmin Trding Co., Ltd*. ("Panmin Scope Memo") (February 20, 2020) for the proposition that "glass pieces" are defined as being at least one centimeter wide, with no further explanation (discussed in greater detail below).

It is also notable that neither the Government nor Cambria provide any other support for their arguments, either based on the plain language of the scope or from the original investigation that the placement of the words "glass pieces" in parenthesis after the third criterion necessitates that "glass pieces" are defined as being one-centimeter in width. The third criterion states: "at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide at their widest cross section (glass pieces)." The placement of the word "glass pieces" in parentheses could also simply refer to "individual pieces of crushed glass that are visible across the surface" without the dimensional limitations.[10] Merely because the Government claims its interpretation is "unmistakable" doesn't make it true. And although Commerce is owed "significant deference" in its interpretation of the scope of an order, Gov. Br. at 14 (*citing Mid Continent Nail Corp. v. United States*, 725 F. 3d 1295, 1300 (Fed. Cir. 2013)), that deference is not unlimited. *See, e.g., Duferco Steel, Inc. v. United States,* 296 F.3d 1087, 1095 (Fed. Cir. 2002).

In contrast to the Government's and Cambria's unsupported assertions, SMA noted in its *Scope Ruling Request* that SMA's interpretation of "glass pieces" was supported by Cambria's original *Scope Clarification Request*. SMA noted that "none of the examples provided by

---

[10] The Government states in a footnote that under SMA's interpretation, "SMA and other companies could skirt Commerce's antidumping and countervailing duty orders by making their products out of barely visible crushed glass, akin to the evasion that the exclusion criteria are designed to prevent." Gov. Br. at 14, fn. 3. This is yet another argument being raised before the Court for the first time, which was never raised or discussed in Commerce's Final Scope Ruling, and must be dismissed as being an impermissible *post hoc* rationalization. *See, supra*.

Petitioner in the Scope Clarification Request provide any evidence that the distance between the 'glass pieces larger than one cm' and the closest separate 'glass pieces larger than one cm' do not exceed three inches."[11] To corroborate its argument, SMA also placed side-by-side comparisons between Petitioner's "Ice Stone" product and SMA's Twilight product. The Government never addressed the *Scope Clarification Request* or the similarities between Cambria's products and SMA's products in its *Final Scope Ruling*. Thus, its arguments on this before the Court must be rejected.

Cambria argues that the term "glass pieces" is "meaningless surplusage" if the Court were to accept SMA's construction of the scope language. Cambria Br. at 13. However, as noted above, even if the term "glass pieces" were being introduced in the third criterion as a defined term, there is no indication either in the plain language of the scope or other sources from the original investigation demonstrating that the term "glass pieces" is limited only to glass pieces as being larger than one-centimeter in width. The Government states that "the fourth criterion provides a distance requirement that limits any ***such*** 'glass piece' from being more than three inches away from any single other." Gov. Br. at 13 (emphasis added). But the fourth criterion does not include the word "such" when referencing "glass piece." If it had, then there might be some basis to the Government's argument that the "third criterion sets-up a width requirement and provides a definition of 'glass piece' that works in tandem with the fourth factor's distance requirement," Gov. Br. at 13.

In response to SMA's argument that "visible glass pieces that are 0.2 to 0.3 microns are all adjacent and necessarily within 3 inches of each other,"[12] Cambria raises arguments in its

---

[11] Scope Ruling Request at 12 (**PR1-2; CR1-2**).

[12] Scope Ruling Request at 12.

Response Brief concerning SMA's reference to "microns" and questions whether the glass pieces in SMA's products are large enough to be visible. Pet. Br. at 14. Cambria argues that a "micron is a unit of length equal to one thousandth of a millimeter, and a 0.3-micron object is the size of a single bacteria{sic}." Pet. Br. at 14. Cambria's arguments should be rejected in full. Cambria had ample opportunity to raise these arguments before the Department but failed to do so.[13] Thus, Cambria failed to exhaust its administrative remedies. *See, supra,* 28 U.S.C. § 2637(d), *Navigator Co., S.A.*, 463 F. Supp. 3d at 1307 ("Petitioners had the opportunity to present this argument to Commerce and failed to do so. Accordingly, Petitioners failed to exhaust their administrative remedies."). Moreover, none of points raised by Cambria with regard to the measurements of a micron formed any part of the Department's justification for denying SMA's *Scope Ruling Request* in the *Final Scope Ruling*.[14] In addition, SMA provided an expert consultant's opinion on the record demonstrating that a 70 mesh product, the size of SMA products, is in fact visible to the naked eye. Neither the Department nor Cambria addressed this evidence, either before the Department or this Court.[15]

### 4.  The Court Should Reject The Government's And Cambria's Arguments Regarding SMA's One Centimeter or Larger Glass Pieces

SMA argued that even under the narrowest reading of the term "glass piece," (*i.e.*, defining "glass piece" as being one-centimeter wide), SMA's products meet the fourth criterion

---

[13] *See* Cambria's Response to the Scope Ruling Request (May 14, 2021) (**PR 3**), at 12-13, demonstrating that Cambria's arguments on page 14 of its Response Brief were never raised.

[14] SMA consistently referred to the size of the glass particles of its products as 40-70 mesh. *See, e.g.,* Scope Ruling Request at 9. In its Scope Ruling Request, SMA accidentally may have referred to the equivalent of 40-70 mesh as being in *microns* rather than *mm*. As noted in Exhibit 11 of the Scope Ruling Request, the 70 mesh particle size is equivalent to 0.2mm, not microns. Even if SMA accidentally referred to microns rather than mm, this point is largely irrelevant, as it did not form any part of the Department decision in the *Final Scope Ruling*.

[15] Scope Ruling Request at Exh. 11.

of the glass scope exclusion. *Scope Ruling Request* at 13. SMA provided multiple photographs and measurements to demonstrate that this was true. *Id*. The Government's and Cambria's arguments to the contrary should be rejected.

In its Response Brief before the Court, the Government: (1) argues that Commerce had examined the photographs provided by SMA and found that they did not show that "all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece.'"; (2) recites a series of arguments raised by Cambria as support for its position and concludes that these arguments justify the Department's conclusion; (3) criticizes SMA's side-by-side comparison of SMA's product "Twilight" to a product manufactured by Icestone LLC, cited by Cambria as a company whose products were intended to meet the crushed glass exclusion because SMA "does not provide any evidence, such as product specifications" to support its assertion. Gov. Br. at 15-16.

Of the arguments above, the only one even mentioned by the Department in its *Final Scope Ruling* is (1). However, as discussed above, the Department provided no indication in the *Final Scope Ruling* that it considered any of SMA's arguments on why it met the fourth criterion even under a narrow reading. And at *no point* in its *Final Scope Ruling* did the Government indicate that it was relying upon any of the arguments raised by Cambria to support its conclusion that SMA's products were in scope. Nor did the Department analyze SMA's Twilight product in comparison to Icestone's product, despite the fact that SMA raised the same argument in its Scope Ruling Request. *See* Scope Ruling Request at 12. Since "an agency's action must be upheld, if at all, on the basis articulated by the agency itself" *see Motor Vehicle Mfrs. Ass'n of U.S., Inc.,* 463 U.S. at 50, the Government's arguments that are being raised for the first time on appeal should be rejected.

Cambria's arguments raised before the Court should similarly be rejected. In addition to the fact that none of these arguments formed the basis of the Department's *Final Scope Ruling*, they are entirely without merit. Like Cambria's Response to SMA's Scope Ruling Request (**PR 3**), Cambria's arguments before the Court are entirely speculative and not founded on any factual record evidence.

First, Cambria argues that the photographs provided by SMA are "fatal" to its argument that the one-centimeter glass pieces are no more than three inches away from the nearest one-centimeter glass piece. To support its claim, Cambria points to an example of one photograph submitted by SMA at Exhibit 14 of the SMA's Scope Ruling Request – the "Grey Concrete Leather" product. It states "The red circles were made by SMA to identify one-centimeter glass pieces in its Scope Ruling Request. The glass piece at the lower right, identified by a yellow arrow, is not within three inches of any other glass piece." Pet. Br. at 16, fn. 5. Cambria is mischaracterizing the photo. SMA did not circle *all* the one-centimeter glass pieces depicted in the photograph, just a representative few to help the Department identify the chips. As SMA explained in its *Scope Ruling Request*, "Attached in Exhibit 14 are images of the Grey Concrete Leather *in which some of the large glass chips are circled for ease of identification*." Simply because the circled glass piece on the lower right of the photo is not next to another circle does not mean SMA's products do not meet this exclusion. SMA did not circle all of the visible one-centimeter pieces, many of which were obscured by the ruler used to show the comparative size and distance of the glass chips.

SMA directs the Court's attention to Exhibit 16 of SMA's Scope Ruling Request (**PR 1-2, CR 1-2**), photographs of SMA's Twilight product. This exhibit includes multiple photographs and measurements demonstrating unequivocally that, for example, Twilight's one-centimeter or

13

larger glass pieces are all within three inches of each other. Similarly, in Exhibit 15, the photographs and measurements provided in the Andes model demonstrate that the large glass chip pieces (which exceed one to two centimeters) are not separated by more than three inches from the next large glass chip piece. *Id*. Notably, Petitioner ignores the Twilight and Andes photo evidence.

Second, Cambria argues that some of SMA's glass pieces are not "visible" and "appear to be specifically devised to keep the pieces out of view so that they cannot be seen" due to their color Pet. Br. at 17. Cambria takes exception to the fact that SMA's glass pieces are "highly translucent" or made of "milk glass," and suggests that they are not visible because they blend in the background.

Whether the glass pieces in SMA's products are visable is not at issue in this appeal. The third criterion of the glass surface product exclusion requires that "at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide as measured at their widest cross-section." The Department correctly found that the requirements of the third criterion, including the visibility of the crushed glass across the surface, was not at issue. Final Scope Ruling at 5. In addition, SMA provided an expert report with its Scope Ruling Request which demonstrated that the pieces contained within SMA's products are visible to the naked eye. *See* Scope Ruling Request at Exh. 11 (**PR 1-2; CR 1-2**). This expert report was never questioned by either the Department or Cambria. Cambria provided no additional evidence or documentation as rebuttal factual information to counter the information SMA placed on the record. Cambria's arguments before the Department and this Court are conjectural and speculative. Merely because some of the glass pieces used by SMA are "highly translucent" or made of milk glass does not make the pieces invisible.

14

SMA explained in its Scope Ruling Request that the pieces were visible, and the visibility of the pieces was never questioned or refuted by the Department in the *Final Scope Ruling*. SMA explained about the "Grey Concrete Leather" and "Andes" products that:

> The production and inclusion of the large glass chip pieces is specifically designed to mimic natural calcite crystals and provide various aesthetic looks, ***and as such are visible***. In other words, ***if you see the variations in the tones of the "Grey Concrete Leather," you are seeing the large glass chip pieces in various alignments with varying shades of pigmentation. Similarly, these large glass chip pieces (easily exceeding 1cm at their widest point) are visible on the surface of the Andes product.*** Their inclusion mimics the natural calcite crystals that one would see in the "veins" on the surface.[16]

Similarly, regarding the Twilight product:

> Twilight has large glass pieces of various colors, including some translucent, across the surface of the slab. A significant number of these larger glass pieces are greater than *one* cm in size, and they are easily visible across the surface of the product. Attached in **Exhibit 16** are photos of the surface of Twilight slab. A ruler is used to demonstrate that glass pieces exceed *one* cm in size.[17]

Finally, Cambria argues that SMA failed to demonstrate that the one-centimeter pieces are visible "across the surface of the product." Pet. Br. at 19. Again, Cambria is raising an argument that is not at issue in this appeal. The Department accepted SMA's argument that the pieces are visible "across the surface of the product" noting in its Final Scope Ruling that "{t}he photographs SMA Surfaces submitted indicate that there are small pieces of glass scattered ***across the surface of its product*** and that the product contain some one centimeter "glass pieces," …". *See* Final Scope Ruling at 5 (emphasis added). Cambria's argument that SMA depicts only a small section of the total product surface, Pet. Br. at 19, is entirely speculative. There is no basis to Cambria's suggestion that the product sections depicted in SMA's Scope

---

[16] Scope Ruling Request at 10-11.

[17] *Id*. at 11.

Ruling Request are different than the whole of the products. These speculative arguments have

no basis in record evidence and must be rejected.

***

Because the Department entirely failed to consider any of the arguments and record

evidence supporting SMA's position in the *Final Scope Ruling*, and almost all of the

Department's arguments before the Court constitute impermissible *post hoc* rationalizations, the

Court must remand this case back to the Department to reconsider its position. The Court should

also reject the arguments raised by Cambria as these were either not raised or relied upon by the

Department in the first instance or because they constitute new information and arguments raised

before the Court that were not exhausted at the administrative level.

**B.    THE DEPARTMENT'S K(1) ANALYSIS WAS ENTIRELY UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

**1.   <u>The Department Did Not Adequately Consider Evidence From The Original Investigation</u>**

The Department claimed in the *Final Scope Ruling* that it purportedly "examined the

other information enumerated under 19 CFR 351.225(k)(1), including the description of the

merchandise contained in the Petitions, the record from the investigations, the final report of the

International Trade Commission, as well as prior scope rulings." However, the Department

provided no analysis of these sources – its "analysis" was essentially comprised of a recitation of

the (k)(1) factors themselves. Furthermore, as discussed in SMA's direct brief, the Department

ignored key record evidence provided by SMA under the (k)(1) sources from the record of the

investigation – namely, that the examples provided in Petitioner's *Scope Clarification Request*

were materially indistinguishable from SMA's products and by Commerce's own scope

language interpretation met the fourth factor. SMA Br. at 11. This was an important piece of

record evidence that warranted review by the Department. In short, "Commerce failed to address,

16

or address in any meaningful way, certain evidence on the record that detracts from its ultimate conclusion,"[18] and therefore the case should be remanded to the Department for reconsideration of all the evidence raised by SMA, including from the (k)(1) sources. The only (k)(1) source actually considered by the Department was the *Panmin Scope Ruling*. However, as discussed below, the decision in that case has limited value in this proceeding.

Contrary to the Government's and Cambria's arguments, the Court's analysis in the *Star Pipe* litigation is directly applicable to this case. As explained in SMA's Direct Brief, in *Star Pipe I*, the Court held:

> the Department's regulation contemplates that Commerce will give thorough and fair consideration to "{t}he descriptions of the merchandise contained in the petition ... and the determinations of the ... Commission," 19 C.F.R. § 351.225(k)(1), in deciding whether certain merchandise is within the scope of an order. Commerce failed to do so here. ***It did not consider the petition, and its analysis of the ITC Report was so selective and cursory as to ignore a substantial amount of information relevant to the scope question presented in this case***.[19]

The Government argues that *Star Pipe I* and *Star Pipe II* can be distinguished from the instant case because the Orders at issue in that case did not define the term "pipe fitting" and that Commerce did not adequately consider the (k)(1) sources. However, this selective reading ignores the fact that the Court held in *Star Pipe I* that Commerce was required to meaningfully address evidence that detracted from its conclusion when Star Pipe raised arguments grounded in the (k)(1) factors. The Court explained in *Star Pipe I*,

> The "analysis" portion of the written determination, *Final Scope Ruling* 10-13, ***makes no mention of analyzing the merchandise descriptions in the petition and, to the contrary, indicates that Commerce did not consider the petition at all***. *See Final Scope Ruling* 10

---

[18] *Star Pipe Prod. v. United States*, 537 F. Supp. 3d 1362, 1380 (Ct. Int'l Trade 2021) ("*Star Pipe III*").

[19] *Star Pipe Prod. v. United States*, 365 F. Supp. 3d 1277, 1286 (Ct. Int'l Trade 2019) ("*Star Pipe I*") (emphasis added).

("For this scope proceeding, the Department examined the language of the *Order*, the description of the products contained in Star Pipe's scope ruling request, and prior scope determinations."). . . . ***The Scope Ruling Request included arguments grounded in the petition.*** *Scope Ruling Request* 9-10. . . In conclusion, Commerce did not comply with its regulation, 19 C.F.R. § 351.225(k)(1), when it failed to consider the merchandise descriptions in the petition ***in response to petition-related arguments Star Pipe made in the Scope Ruling Request.*** The court, therefore, must order Commerce to considerthe merchandise descriptions in the petition and the arguments Star Pipe made regarding them.

*Id*. at 1282-83 (emphases added).

Similarly, in this case, SMA made arguments grounded in the (k)(1) factors – in this case, based upon Petitioner's *Scope Clarification Request* submitted during the original investigation.[20] SMA submitted record evidence that none of the examples in Petitioner's original *Scope Clarification Request* "provide any evidence that the distance between the 'glass pieces larger than one cm' and the closest separate 'glass pieces larger than one cm' do not exceed three inches. In fact, the only evidence in the *Scope Clarification Request* is that '***some***' of the individual glass pieces are larger than one cm, and '***any*** single glass piece and the closest separate glass piece does not exceed three inches.'"[21] SMA corroborated its arguments by providing a side-by-side comparison between a sample of a product that was cited by Petitioner in the *Scope Clarification Request* as an example of a product that the exclusion was intended to cover,[22] and SMA's "Twilight" (5"x10") sample product.[23]

The Government argues now (though not in its *Final Scope Ruling*) that SMA's assertions regarding the similarity in products "cannot overcome record evidence . . . indicating

---

[20] SMA Br. at 9.

[21] *Id*. at 12 (emphases in original).

[22] *Id*. at Exhibit 3 (Petitioner cited to Icestone's products in the *Scope Clarification Request* at Exhibit 2).

[23] *Id*. at 12 and Exhibit 17.

that SMA's products do not meet the unambiguous language of the crushed glass exception."
Gov. Br. 19. But the Department provided no meaningful discussion of what that record
evidence demonstrated or why it could not be overcome. Nor did it consider evidence that could
detract from its ultimate conclusion – namely that SMA's products were excluded based even on
the narrow definition of "glass pieces."

Cambria argues that the Department was not required to consider the (k)(1) factors at all
because the plain language of the scope was dispositive. Pet. Br. at 20-21. While SMA disagrees
with that contention, whether the Department had a theoretical obligation to consider the (k)(1)
factors is largely irrelevant when (1) when the Department itself claimed that it considered such
sources and (2) SMA raised arguments grounded in the (k)(1) factors. *See Star Pipe I*, supra.
Under these circumstances, the Department was obligated to ensure its consideration was
supported by substantial evidence.

Cambria's other arguments concerning the (k)(1) factors are similarly unavailing and
must be rejected. Cambria provides a discussion of the history of the exclusion and its
modifications to ensure that Chinee producers and exporters would not evade duties. However,
this background, which was never addressed by the Department in its *Final Scope Ruling*, has no
bearing as to whether SMA's products meet the physical criteria of the scope exclusion.

Cambria provides a photograph that was included by the Court in its opinion upholding
Commerce's scope modification of the QSP Orders, describing it as an "exemplary photograph
demonstrating the 'unique appearance; of the crushed glass products that Cambria and
Commerce intended to include." Pet. Br. at 25, *citing M.S. Int'l, Inc. v. United States*,
Memorandum and Order at 6 (Ct. Int'l Trade Feb. 12, 2021). Cambria argues that SMA's
products are nothing like this product. However, a comparison between the product included in

the CIT's decision and SMA's Twilight product, provided in the Scope Ruling Request at Exhibit 16 (**CR 2; PR 2**), demonstrates that the appearance of the two products are, in fact, very similar. The only difference is that the image provided by Cambria is zoomed in and depicts glass of a different color. However, the appearance of the large and small glass pieces across the surface of the product, and proximity of these to each other, are very similar.

SMA also takes exception to Cambria's claim that "SMA's products are simply a new iteration of the 'quartz glass' that was created to evade the QSP Orders." This highly speculative claim has no basis on any record evidence. Furthermore, it cannot be true given the fact that SMA has been involved in the development of glass component surface products long before the Scope Modification Determination[24] and petition on QSP was filed. *See* SMA Scope Ruling Request at 2 (**CR 1; PR 1**). SMA explained the history of its involvement with glass product which long pre-dated the QSP Petition in its Scope Ruling Request. *Id*.

Cambria argues that Commerce's ruling did not ignore record evidence that photographs of Twilight are virtually identical to products made by Icestone, a company cited by Cambria in its Scope Clarification Request as producing the types of crushed glass products that were intended to be excluded. Commerce never addressed this argument at all, and Cambria may not substitute its own arguments for Commerce's. Cambria claims that it never stated that "all" of the products made by Icestone were intended to be excluded from the Order, but it also does not attempt to claim that the "Snow Flurry" product would not be excluded. Pet. Br. at 26-27. Furthermore, Cambria's claim that SMA "deliberately concealed" Twilight's one-centimeter pieces to make them similar to Icestone's "Snow Flurry" product is entirely speculative and not

---

[24] *See* Certain Quartz Surface Products from the People's Republic of China: Scope Modification Determination, dated (May 14, 2019) ("Scope Modification Determination") (**CR 1; PR 1**).

based upon any record evidence. Furthermore, as discussed above, whether SMA's products have glass pieces visible across the surface is not at issue in this appeal, as this was already acknowledged and accepted by the Department.

### 2.   The *Panmin Scope Ruling* Is Not Directly Applicable To This Case

Finally, both the Government and Cambria posit that Commerce correctly considered the *Panim Scope Ruling* under the (k)(1) factors in making its *Final Scope Ruling*. The Government and Cambria argue that it was entirely appropriate for Commerce to consider this determination due to the ruling's similarity. Gov. Br. at 20. While SMA acknowledges that it is correct and appropriate for the Department to consider prior scope rulings, simply applying that case to the instant case with no further analysis does not fulfill Commerce's evidentiary burden. As SMA noted in its direct brief, the *Panmin Scope Ruling* was never appealed, and even if instructive, it is not binding, particularly since the Court has not opined on whether the *Panmin Scope Ruling* is supported by substantial evidence.

Cambria argues that there is no legal authority for SMA's argument that the *Panmin Scope Ruling* holds limited weight. Pet. Br. at 23. However, the Department's reliance on *Panmin* in this case is similar to its reliance on the "*UV Ruling*" in *Star Pipe Prod. v. United States*, 463 F. Supp. 3d 1366, 1377 (Ct. Int'l Trade 2020) ("*Star Pipe II*"). In that case, the Court recognized that there was a prior scope ruling that was "on point" but the Court did not accord any weight to that decision. The Court explained:

> {T}he *UV Ruling appears to be on point* and in that respect, when considered according to 19 C.F.R. § 351.225(k)(1), provides support for a determination placing Star Pipe's flanges within the scope of the Order. *This is not to suggest that the support it lends is unqualified; to the contrary, the support it provides is limited by the errors in that ruling.*

*Id*. at 1377. As with the *Panmin Scope Ruling*, the *UV Ruling* had also not been affirmed through appeal.

As previously noted, in the *Final Scope Ruling*, the Department provided no analysis comparing the products at issue in the *Panmin Scope Ruling* and provided no record evidence demonstrating that the products at issue in that case were comparable to the products at issue in this case. The Department also did not issue a single supplemental questionnaire to SMA to further investigate whether there were any such similarities. As discussed above, the Department's cursory reference to the *Panmin Scope Ruling* also did not consider the fact that SMA's products meet the exclusionary language of the fourth factor even in its narrowest reading. It is also not clear to what extent the respondent in the *Panmin Scope Ruling* raised arguments concerning the construction of the scope exclusion language.

Scope rulings are case specific, and if a prior scope ruling is being applied to a subsequent one, the Department is required to ensure that the facts of the case warrant such an application. Moreover, a scope ruling that has previously been issued may be "on point" but if it is "limited by the errors in that ruling," it should be accorded limited value. *Star Pipe II* at 1377.

## II.     CONCLUSION

For the reasons discussed above, SMA requests that this Court hold that the Department's *Final Scope Ruling* is unsupported by substantial evidence and otherwise not in accordance with law and remand the Final Results with instructions to issue a new determination that is consistent with the Court's decision.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

*/s/ Kavita Mohan*
Erik D. Smithweiss*
Michael S. Holton
Kavita Mohan

1201 New York Ave., NW, Suite 650

22

Washington, DC 20005
(202) 783-6881

***

*707 Wilshire Boulevard, Suite 4150
Los Angeles, CA 90017-3720
(213) 624-1970

Dated:  July 8, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for SMA Surfaces, Inc's. Reply Brief, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2013, is 6,975 words, less than the 7,000 word limit.


*/s/ Kavita Mohan*
Kavita Mohan


*Counsel for Plaintiff SMA Surfaces, Inc.*
*(f/k/a Polarstone US)*

Dated: July 8, 2022