Slip Op 23-4

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SMA SURFACES, INC. (F/K/A POLARSTONE US), <br><br> **Plaintiff,** <br><br> v. <br><br> UNITED STATES, <br><br> **Defendant,** <br><br> and <br><br> CAMBRIA COMPANY, LLC, <br><br> **Defendant-Intervenor.** | Before: Gary S. Katzmann, Judge <br> Court No. 21-00399 |

## OPINION AND ORDER

[Plaintiff's Motion for Judgment on the Agency Record is granted in part and denied in part.  The U.S. Department of Commerce's Final Scope Ruling is remanded consistent with this opinion.]

Dated: <u>January 12, 2023</u>

<u>Michael S. Holton</u>, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, D.C., argued for Plaintiff SMA Surfaces, Inc. (f/k/a Polarstone US).  With him on the briefs were <u>Jordan C. Kahn</u>, <u>Kavita Mohan</u>, and <u>Erik D. Smithweiss</u> of Los Angeles, CA.

<u>Joshua E. Kurland</u>, Senior Trial Counsel, U.S. Department of Justice, Washington, D.C., argued for Defendant United States.  With him on the briefs were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.  Of Counsel <u>Jared Cynamon</u>, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement & Compliance.

<u>Luke A. Meisner</u>, Schagrin Associates, of Washington, D.C., argued for Defendant-Intervenor Cambria Company LLC.  With him on the brief was <u>Roger B. Schagrin</u>.

      Katzmann, Judge:  This case calls on the court to go beyond scratching the glass surface

when reviewing an agency's interpretation of scope text and photographic record evidence.

Plaintiff SMA Surfaces, Inc. ("SMA Surfaces" or "Plaintiff"), an importer of crushed glass surface products from the People's Republic of China ("China"), brings the instant action to contest a scope ruling by the U.S. Department of Commerce ("Commerce" or "the Government"). SMA Surfaces had requested a scope inquiry clarifying that three of its glass surface products were not subject to the antidumping and countervailing duty orders on certain quartz surface products from China, which Commerce had instituted pursuant to the statutes designed for fair trade and prevention of injury to domestic industry. See Certain Quartz Surface Products from the People's Republic of China: Antidumping and Countervailing Duty Orders, 84 Fed. Reg. 33,053 (Dep't Com. July 11, 2019) ("QSP Orders"). After reviewing SMA Surfaces's request, Commerce determined that the scope language of the QSP Orders covered the three glass surface products. See Mem. from J. Pollack to J. Maeder, re: Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: SMA Surfaces at 5–6 (Dep't Com. July 15, 2021), P.R. 15 ("Final Scope Ruling"). SMA Surfaces petitions the court for review, contending that the Final Scope Ruling was "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

The court concludes that Commerce's determination to include the glass surface products was in accordance with law but only partly justified by substantial evidence. While Commerce's interpretation of the QSP Orders was consistent with plain text, substantial evidence justified the inclusion of only two of the three glass surface products, branded "Grey Concrete Leather" and "Andes," but not the third "Twilight" product. Finally, Commerce's consideration of evidence under 19 C.F.R. § 351.225(k)(1) was also in accordance with law, thereby preserving Commerce's determinations as to the Grey Concrete Leather and Andes products. Plaintiff's Motion for

Judgment on the Agency Record is granted in part and denied in part, and the court remands to Commerce for further explanation or reconsideration consistent with this opinion.

## BACKGROUND

"When participants in a domestic industry believe that competing foreign goods are being sold in the United States at less than their fair value," Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1297–98 (Fed. Cir. 2013), or that competing foreign goods are subject to a foreign country's countervailable subsidy with respect to their manufacture, production, or export, see 19 U.S.C. § 1671(a)(1), then they may petition Commerce to impose antidumping or countervailing duties on importers. See 19 U.S.C. §§ 1671a(b), 1673a(b). If Commerce determines that "the subject merchandise is being, or is likely to be, sold in the United States at less than its fair value," 19 U.S.C. § 1673d(a), or that "a countervailable subsidy is being provided with respect to the subject merchandise," 19 U.S.C. § 1671d(a), and the United States International Trade Commission ("ITC") determines that a domestic industry is materially injured or threatened with material injury as a result, Commerce issues an antidumping and/or countervailing duty order. 19 U.S.C. §§ 1671d(b), 1673d(b). But "[q]uestions sometimes arise as to whether a particular product is covered by the scope of an antidumping or countervailing duty order." 19 C.F.R. § 351.225(a) (2022). Importers may ask for scope rulings, which are determinations made by Commerce that clarify the scope of the order, once issued, as it relates to their particular product. See id. § 351.225.

On April 17, 2018, Defendant-Intervenor Cambria Company LLC ("Cambria"), a domestic producer of quartz surface products, submitted antidumping and countervailing duty petitions to Commerce concerning imports of certain quartz surface products from China. See Certain Quartz Surface Products from the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation, 83 Fed. Reg. 22,613, 22,614 (Dep't Com. May 16, 2018); Certain Quartz Surface

<u>Products from the People's Republic of China: Initiation of Countervailing Duty Investigation</u>, 83 Fed. Reg. 22,618, 22,622 (Dep't Com. May 16, 2018) (together, the "Investigations"). Quartz surface products "consist of slabs and other surfaces created from a mixture of materials that includes predominately silica (e.g., quartz, quartz powder, cristobalite) as well as a resin binder (e.g., an unsaturated polyester)," and include "surfaces such as countertops, backsplashes, vanity tops, bar tops, work tops, tabletops, flooring, wall facing, shower surrounds, fire place surrounds, mantels, and tiles." <u>Investigations</u>, 83 Fed. Reg. at 22,618, 22,622. The initial scope of the investigation "[s]pecifically excluded . . . crushed glass surface products," defining crushed glass surface products to mean "surface products in which the crushed glass content is greater than any other single material, by actual weight." <u>Id.</u>

On March 1, 2019, Cambria asked Commerce to clarify this exclusion in the Investigations' scope text. <u>See</u> Letter from Cambria Co. LLC to Dep't Com., re: Certain Quartz Surface Products from the People's Republic of China: Request for Scope Clarification (Mar. 1, 2019) ("Scope Clarification Req."). The Scope Clarification Request noted that, in the wake of Commerce's preliminary affirmative determinations in the antidumping and countervailing investigations of quartz surface products from China, Chinese producers and exporters had begun to ship "quartz surface products made from ground glass powder that [were] virtually indistinguishable in appearance from other quartz surface products." <u>Id.</u> at 7. By contrast, the exclusion of crushed glass surface products in the initial Investigations was "intended to capture" a particular kind of "crushed glass surface product[] made by" domestic producers such as "IceStone, Vetrazzo, Curava, and Florentine Marble." <u>Id.</u> at 5. Those surface products contain pieces of crushed glass from recycled materials such as bottles and jars as an "eco-friendly solution" and have a distinct appearance that "emphasize[s] . . . [the] recycled content." <u>Id.</u> at 5–6. Because the scope language

in the Investigations "was never intended" to cover crushed glass products that were effectively

indistinguishable from other quartz surface products, Cambria proposed an amendment to the

scope text that enumerated four requirements to meet the crushed glass exclusion. Id. at 7, 11. On

May 14, 2019, Commerce modified the scope of the Investigations, reasoning that:

> [I]nformation [on the record] overtly suggests the possibility of future evasion of the orders if we do not modify the scope in these investigations. . . .
>
> Commerce should modify the scope of the Petitions to best reflect an effective scope of the potential orders which would provide the injured domestic parties with the remedy it is seeking -- a remedy which counters injurious dumping and subsidization. Indeed, were Commerce not to address it here, we would fail to best address the dumping and subsidies found to exist in these investigations.

Mem. from M. Skinner to G. Taverman, re: Certain Quartz Surface Products from the People's

Republic of China: Scope Modification Determination at 4 (Dep't Com. May 14, 2019) ("Scope

Modification Mem."). Importers subsequently challenged Commerce's scope modification as

unlawful and unjustified by substantial evidence. See MS Int'l, Inc. v. United States, 32 F.4th

1145 (Fed. Cir. 2022). The Federal Circuit reasoned, in relevant part, that because "Commerce

found the Preliminary Scope to be defective [where] Chinese producers and exporters could evade

antidumping and countervailing duty orders by selling 'quartz glass,'" Commerce acted within its

discretion when it "modified the scope to cure the defect" and gave "appropriate deference to the

petitioner's intent." Id. at 1150–52.

On July 11, 2019, Commerce issued final antidumping and countervailing duty orders on

certain quartz surface products from China. See QSP Orders, 84 Fed. Reg. 33,053. The scope of

the QSP Orders once again "specifically exclude[s] crushed glass surface products." Id. at 33,055–

56. The exemption for crushed glass surface products in the final QSP Orders ("crushed glass

exclusion") requires the satisfaction of four criteria, defined as follows:

> Specifically excluded from the scope of the orders are crushed glass surface products. Crushed glass surface products must meet each of the following criteria to qualify for this exclusion: (1) The crushed glass content is greater than any other single material, by actual weight; (2) there are pieces of crushed glass visible across the surface of the product; (3) at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide as measured at their widest cross-section (glass pieces); and (4) the distance between any single glass piece and the closest separate glass piece does not exceed three inches.

Id.

SMA Surfaces, an importer of quartz and glass surface products from China, filed a scope ruling request with Commerce on April 28, 2021.  Letter from SMA Surfaces, Inc. to Dep't Com., re: Antidumping Duty Order on Certain Quartz Surface Products from the People's Republic of China: Scope Ruling Request (Apr. 28, 2021), P.R. 1–2 ("Scope Ruling Req.").  SMA Surfaces asked that Commerce find that three of its glass surface products -- branded "Grey Concrete Leather," "Andes," and "Twilight" (together, the "three glass surface products") -- were outside the scope of the QSP Orders because they satisfied the crushed glass exclusion.  Id.  SMA Surfaces submitted photos in an effort to demonstrate compliance with the four criteria.  Id. at 4.  SMA Surfaces represented that these photos depicted glass pieces of various sizes -- ranging from 0.2– 0.3 millimeters to larger than one centimeter -- all within three inches of one another.  Id.  The photos were sufficient to satisfy the fourth criterion, SMA Surfaces argued, because nothing in the fourth criterion limited the definition of "any single glass piece" to only one-centimeter-wide glass pieces.  Id.  In the alternative, even if Commerce were to limit the fourth criterion to one-centimeter-wide glass pieces, SMA Surfaces maintained that the photos demonstrated that the three glass surface products still satisfied the exclusion criteria.  Id.  In opposing comments submitted to Commerce on May 14, 2021, Petitioner Cambria argued that SMA Surfaces's products were subject to the QSP Orders because they did not meet the second, third, and fourth elements of the crushed glass exemption.  See Letter from Cambria Co. LLC to Dep't Com., re:

Response to Scope Ruling Request by SMA Surfaces, Inc. at 7–14 (May 14, 2021), P.R. 3.[1]  Of relevance in this appeal, Cambria argued against SMA Surfaces's interpretation of the fourth criteria.  See id. at 11–14.  Per Cambria, "glass pieces" is a defined term referring to visible pieces of crushed glass larger than one centimeter that is then used in criterion four's distance requirement.  See id. at 12.

On July 16, 2021, Commerce concluded that the three glass surface products were within the scope of the QSP Orders.  Final Scope Ruling at 5–6.  Commerce explained that the three glass surface products met the first through third criteria of the crushed glass exclusion, id. at 5, but did not meet the fourth:

> The fourth criterion then specifies that it is these one-centimeter glass pieces that must be at most three inches apart.  Here, SMA Surfaces has provided record evidence demonstrating that its glass surface products are predominantly glass.  The photographs SMA Surfaces submitted indicate that there are small pieces of glass scattered across the surface of its products and that the products contain some one centimeter "glass pieces," as defined by the crushed glass scope exclusion language.
>
> As explained above, the scope specifies that the distance between any single "glass piece" and the closest separate "glass piece" may not exceed three inches.  However, an examination of the pictures of the three glass surface products shows that they do not meet the crushed glass scope exclusion, because not all one centimeter "glass pieces" are within three inches of another one centimeter "glass piece" across the surface of the product.

Id.

SMA Surfaces timely filed the instant action against Defendant United States ("the Government") on September 9, 2021 to challenge the Final Scope Ruling.  See Compl. at 1, Sept. 9, 2021, ECF No. 10.  Cambria filed an unopposed motion to intervene as Defendant-Intervenor on October 8, 2021, see Def.-Inter.'s Mot. to Intervene, Oct. 8, 2021, ECF No. 12, which the court granted later that day, see Ct. Order Granting Def.-Inter.'s Mot. to Intervene, Oct. 8, 2021, ECF

---

[1] Cambria's comments to Commerce also alleged that it was unclear whether SMA Surfaces's products satisfied the first criterion of the exclusion.  See id. at 14.

No. 18.  SMA Surfaces filed its Motion for Judgment on the Agency Record on February 16, 2022

pursuant to USCIT Rule 56.2.  See Pl.'s Mot. for J. on Agency R., Feb. 16, 2022, ECF No. 22

("Pl.'s Br.").  The Government and Cambria filed response briefs on May 25, 2022, see Def.'s

Resp. to Pl.'s Mot. for J. on Agency R., May 25, 2022, ECF No. 27 ("Def.'s Br."); Def.-Inter.'s

Resp. Br. in Opp'n to Mot. for J. on Agency R., May 25, 2022, ECF No. 26 ("Def.-Inter.'s Br."),

to which SMA Surfaces replied on July 8, 2022, see Pl.'s Reply Br., July 8, 2022, ECF No. 28

("Pl.'s Reply").  Cambria moved for oral argument, see Mot. for Oral Arg., July 29, 2022, ECF

No. 31, which the court granted and scheduled for November 1, 2022, see Order on Mot. for Oral

Arg., Sept. 13, 2022, ECF No. 32.  The court issued questions in advance of argument, see Ct.'s

Qs. for Oral Arg., Oct. 11, 2022, to which the parties filed responses, see Pl.'s Resp. to Ct.'s Oral

Arg. Qs. ("Pl.'s OAQ Resp."), Oct. 25, 2022, ECF No. 35; Def.'s Resp. to Ct.'s Oral Arg. Qs.,

Oct. 25, 2022, ECF No. 36 ("Def.'s OAQ Resp."); Def.-Inter.'s Resp. to Ct.'s Oral Arg. Qs., Oct.

25, 2022, ECF No. 37 ("Def.-Inter.'s OAQ Resp.").  The court invited parties to file submissions

after oral argument on November 1, 2022, see Oral Arg., Nov. 1, 2022, ECF No. 39, and on

November 9, 2022, all parties made such submissions, see Pl.'s Post-Arg. Subm., Nov. 9, 2022,

ECF No. 40; Def.'s Post-Arg. Subm., Nov. 9, 2022, ECF No. 41; Def.-Inter.'s Post-Arg. Subm.,

Nov. 9, 2022, ECF No. 42.

## DISCUSSION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c),

which empowers the Court of International Trade to review decisions by Commerce concerning

"whether a particular type of merchandise is within the class or kind of merchandise described in

an . . . antidumping or countervailing duty order."   19 U.S.C. § 1516a(a)(2)(B)(vi).   When

reviewing final scope rulings by Commerce, "[t]he court shall hold unlawful any determination

. . . found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." Id. § 1516a(b)(1)(B)(i).

Plaintiff mounts three challenges to the Final Scope Ruling. First, SMA Surfaces argues that Commerce's construction of the crushed glass exclusion's fourth criterion was not in accordance with law: specifically, Commerce's interpretation of the term "glass piece" in the fourth criterion as a defined term that included the third criterion's dimensional requirements was inconsistent with the plain text of the QSP Orders. Second, assuming, arguendo, that Commerce's interpretation was permissible, SMA Surfaces contends that substantial evidence on the record showing satisfaction of the fourth criterion did not justify Commerce's determination that the scope of the QSP Orders included the three glass surface products. Third, Plaintiff argues that Commerce, in considering the 19 C.F.R. § 351.225(k)(1) factors, failed to address detracting evidence and improperly relied on a prior scope determination. The court considers each in turn.

## I.    *Commerce's Interpretation of "Glass Piece" Is in Accordance with Law*

The first question is whether Commerce's interpretation of the term "glass piece" in the scope text was in accordance with law. Recall that the third and fourth criteria -- the only portions of the QSP Orders here at issue -- require:

> (3) at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide as measured at their widest cross-section (glass pieces); and (4) the distance between any single glass piece and the closest separate glass piece does not exceed three inches.

QSP Orders, 84 Fed. Reg. at 33,056. SMA Surfaces argued before Commerce that "a plain reading of the scope compels the conclusion that the plain language of 'any single glass piece' in the scope cannot be limited to mean a glass piece larger than one centimeter. There is nothing in the fourth factor that defines 'glass piece' or limits this term to glass pieces larger than one centimeter," in contrast with the third criterion, which uses the word "some . . . pieces of crushed glass" instead

of "any single glass piece."  Pl.'s Br. at 8 (emphasis added); see also Final Scope Ruling at 4.

Having noted these arguments, Commerce reasoned in the Final Scope Ruling:

> We find that the language in the scope of the Orders is dispositive with regard to these products. . . . The third criterion of the crushed glass scope exclusion defines a "glass piece" as pieces of glass "larger than one centimeter wide as measured at their widest cross-section (glass pieces)." The fourth criterion then specifies that it is these one-centimeter glass pieces that must be at most three inches apart. . . .
>
> [T]he scope specifies that the distance between any single "glass piece" and the closest separate "glass piece" may not exceed three inches.

Final Scope Ruling at 5–6.  SMA Surfaces now seeks review of Commerce's interpretation.  The

court declines to adopt Plaintiff's construction of the third and fourth criteria and concludes that

Commerce's interpretation was consistent with the plain text of the QSP Orders and is, therefore,

in accordance with law.

Because "[n]o specific statutory provision govern[s] the interpretation of the scope of

antidumping or countervailing orders," Federal Circuit case law and 19 C.F.R. § 351.225(k)

together supply a three-step inquiry.[2]  Meridian Prods., LLC v. United States, 851 F.3d 1375, 1381

(Fed. Cir. 2017) (internal quotation marks omitted) (alterations in original) (quoting Shenyang

Yuanda Aluminum Indus. Eng'g Co. v. United States, 776 F.3d 1351 (Fed. Cir. 2015)).  "First,

Commerce must look to the text of an order's scope; second, Commerce will consult descriptions

of the merchandise in other sources [pursuant to 19 C.F.R. § 351.225(k)(1)]; and third, if still

---

[2] Commerce issued the Final Scope Ruling on July 15, 2021, pursuant to 19 C.F.R. § 351.225(d), (k)(1).  See Final Scope Ruling at 1.  In September 2021, Commerce promulgated a final rule that amended the text of 19 C.F.R. § 351.225(k)(1) to reflect the three-step inquiry that had been fashioned by the Federal Circuit's combining of case law and the prior code provisions.  See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300, 52,322–23 (Dep't Com. Sept. 20, 2021).  Because the revisions to § 315.225 applied "to scope inquiries for which a scope ruling application is filed . . . on or after November 4, 2021," id. at 52,300, the court applies the prior version of 19 C.F.R. § 351.255(k) in combination with Federal Circuit case law, see Pl.'s Br. at 12 n.27; Def.'s Br. at 9 n.2; Def.-Inter.'s Br. at 11 n.2.

necessary, Commerce may consider additional factors comparing the merchandise in question to merchandise subject to the order [pursuant to 19 C.F.R. § 351.225(k)(2)]." Id.  The first "question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law" that the court reviews de novo.[3] Id. at 1382 (citing Allegheny Bradford Corp. v. United States, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004)).  "If the scope [language] is unambiguous, it governs." Id. at 1381 & n.7 (footnote omitted) ("The relevant scope terms are 'unambiguous' if they have 'a single or clearly defined or stated meaning.'" (quoting Unambiguous, Webster's Third New International Dictionary of the English Language Unabridged (1986))).

---

[3] Where appropriate, the court must grant "Commerce 'substantial deference' with regard to its interpretation of its own antidumping duty and countervailing duty orders." Id. at 1381–82 (quoting King Supply Co. v. United States, 674 F.3d 1373, 1348 (Fed. Cir. 2012)).  But Commerce may not "interpret orders contrary to their terms." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002) (internal quotation marks omitted) (quoting Wheatland Tube Co. v. United States, 161 F.3d 1365, 1371 (Fed. Cir. 1998)).  The court therefore does not owe deference to Commerce for its determination of whether the text of the scope order is unambiguous, which is a question within the competence of courts and reviewed de novo.  See, e.g., Arcelormittal Stainless Belg. N.V. v. United States, 694 F.3d 82, 89–90 (Fed. Cir. 2012) (holding that "Commerce was not justified in finding the order ambiguous" where "Commerce's broad reading of the . . . order is in conflict with the plain language of the order itself"); cf. Kisor v. Wilkie, 139 S. Ct. 2400, 2415 (2019) (When interpreting agency rules, "the possibility of deference can arise only if a regulation is genuinely ambiguous. . . . even after a court has resorted to all the standard tools of interpretation.").

The court further notes that the deference Commerce gave to Cambria in MS International, which required Commerce to set an investigation scope consistent with the petitioner's intent, see 32 F.4th at 1151, and is sourced in Commerce's statutory obligation to consider an interested party's petition, see Ad Hoc Shrimp Trade Action Comm. v. United States, 33 CIT 915, 924, 637 F. Supp. 2d 1166, 1174–75 (2009) (citing 19 U.S.C. §§ 1673, 1673a(b)), is unrelated to the deference implicated in this case.  Here, it is the court that may give deference to Commerce, if appropriate, in its interpretation of the scope text when deciding the final scope ruling.  This latter deference is ultimately sourced in Congress's delegation of authority to Commerce as "the agency charged with administering the antidumping [and countervailing] duty program." Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 783 (Fed. Cir. 1995), as corrected on reh'g (Sept. 1, 1995).

Text and context both affirm Commerce's interpretation of "glass piece" as a defined term in the QSP Orders. To begin, placement of shorthand text in parentheses after a long description commonly indicates a defined term.[4] When reviewing the scope of an antidumping or countervailing duty order, this court has previously understood subsequent references to a term within parentheses to relate back to the initial definition. See Eckstrom Indus., Inc. v. United States, 22 CIT 1034, 1045, 27 F. Supp. 2d 217, 226 (1998) ("Commerce placed 'pipe fittings' within a parenthetical. Thereafter, Commerce referred simply to 'pipe fittings' when defining the scope. Because 'pipe fittings' as defined by Commerce refers only to welded stainless steel pipe fittings, all of Commerce's subsequent descriptions of pipe fittings can refer only to welded pipe fittings . . . ." (citations omitted)). Commerce applied that same understanding here. The QSP Orders place "glass pieces" in parentheses after the description of "individual pieces of crushed glass that are visible across the surface [and] larger than one centimeter wide as measured at their widest cross-section." QSP Orders, 84 Fed. Reg. at 33,056. The text then twice reprises "glass pieces" in the immediately following criterion, which thereby refers back to the third criterion's dimensional limitations. See id.

The accumulative and successively narrowing design of the crushed glass exclusion makes Commerce's reading all but certain. When "interpreting a regulatory provision, we examine the text of the regulation as a whole, reconciling the section in question with sections related to it." Lengerich v. Dep't of Interior, 454 F.3d 1367, 1370 (Fed. Cir. 2006) (emphasis added). The first criterion, as a kind of threshold requirement, mandates a sufficient percentage weight of crushed

---

[4] This commonplace practice of defining shorthand is also present in the parties' briefing. See, e.g., Pl.'s Br. at 1 (defining "ADD," "CVD," and "QSP Orders," among other terms, using parentheses); Def.'s Br. at 1 (similar); Def.-Inter.'s Br. at 1 (similar). Furthermore, SMA Surfaces does not dispute the use of other defined terms in the QSP Orders. See, e.g., QSP Orders, 84 Fed. Reg. at 33,053 (defining "quartz surface products").

glass.  The second through fourth criteria enumerate accumulative, successively narrowing requirements:  Criterion two requires <u>visible</u> crushed glass; criterion three requires <u>one-centimeter-wide</u>, visible crushed glass; and criterion four requires <u>adequately distanced</u>, one-centimeter-wide, visible crushed glass.  Instead of repeating criterion three's detailed requirements, criterion four uses shorthand to accomplish this successively narrowing scheme.  The references to "glass piece[s]" in the fourth criterion, therefore, refer to pieces of crushed glass that meet the third criterion's dimensional limitations.

SMA Surfaces's arguments that "glass piece" is not a defined term are unavailing.  Plaintiff argues that the definition of "glass pieces" in the third criterion, which uses the term "at least <u>some</u> of the individual pieces," is in tension with the use of "<u>any</u> single glass piece" in the fourth criterion because the ordinary meaning of "'any' cannot mean 'some.'"  Pl.'s Br. at 8–9 (emphasis added).  Specifically, "any" is "used to indicate one selected <u>without restriction</u>," Pl.'s Resp. at 6 (emphasis in original) (internal quotation marks omitted) (quoting <u>Any</u>, Merriam-Webster, https://www.merriam-webster.com/dictionary/any (last visited Jan. 11, 2023)), and therefore "'any single glass piece' means any visible glass piece as would be necessary to observe distances between them necessitated by the fourth criterion -- and not only those that are larger than one-centimeter, as referenced in the third criterion," <u>id.</u> at 5–6.  But this approach cherry-picks two words and strips them of context.  "[T]he term 'any' 'has a diversity of meaning and may be employed to indicate "all" or "every" as well as "some" or "one" and its meaning in a given statute depends upon the context and the subject matter of the statute.'"  <u>Eteros Techs. USA, Inc. v. United States</u>, 46 CIT __, __, 592 F. Supp. 3d 1313, 1324 (2022) (quoting <u>Any</u>, <u>Black's Law Dictionary</u> (6th ed. 1996)).  Interpreting "glass piece" as a defined term resolves the very tension Plaintiff identifies.  Criterion three states that <u>some</u> pieces of crushed glass, out of all the pieces of crushed

glass visible across the product's surface, must meet dimensional requirements; criterion four requires <u>any</u> of those pieces that do meet the dimensional requirements to also meet the distance requirements.  In short, the Government is correct that "the two criteria are harmonious: the third criterion defines the term, and the fourth criterion explicitly reprises it."  Def.'s Br. at 13.

Plaintiff's focus on the editing history surrounding punctuation similarly fails to overcome the plain text reading.  SMA Surfaces insists that "there are no quotation marks around the parenthetical term, capitalization of the words in the term, or other indicia that it is to function as a defined term, such as being prefaced with 'hereinafter.'"  Pl.'s OAQ Resp. at 4.  Additionally, the style of the parenthetical in Cambria's proposal, which styled the parenthetical as ("Glass Pieces") and all subsequent references as Glass Piece, differs from the final version that was published in the <u>Federal Register</u>, which styled the parenthetical as (glass pieces) and all subsequent references as glass piece.  <u>Compare</u> Scope Modification Mem. at 12, <u>with</u> Scope Clarification Req. at 9.  In noting this distinction, SMA Surfaces argues that Commerce's subsequent modification of Cambria's proposed language supersedes Cambria's initial intention to define the term.  <u>See</u> Pl.'s OAQ Resp. at 4–5.  But all legal documents authored by Commerce before the court -- whether published in the <u>Federal Register</u> or filed via ACCESS -- have used parentheticals with noncapitalized terms and no quotation marks in order to define shorthand, suggesting a consistent style.  <u>See, e.g.</u>, <u>QSP Orders</u>, 84 Fed. Reg. at 33,053 (defining "quartz surface products" in a parenthetical without capitalization or quotation marks); <u>Scope Modification Determination</u> at 1 (same); Final Scope Ruling at 1 (defining "glass surface products" in a parenthetical without capitalization or quotation marks).  Furthermore, "a purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting [the text's] true meaning. . . . [Textual] construction 'is a holistic endeavor,' and, at a minimum, must

account for [the] full text, language as well as punctuation, structure, and subject matter." U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 454 (1993) (quoting United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988)). That Commerce changed the quotation marks and capitalized letters from Cambria's proposal -- a change that was almost certainly stylistic rather than substantive[5] -- cannot supply an inference so broad that undoes the crushed glass exclusion's structure of accumulative, successively narrowing criteria.

The broader issue with SMA Surfaces's argument is that it fails to offer a plausible explanation for what the "glass pieces" parenthetical at the end of the sentence could signify, if not a defined term for the products described in the preceding sentence. The court cannot accept an interpretation that renders the "(glass pieces)" parenthetical meaningless and "mere surplusage." Polites v. United States, 35 CIT 312, 317, 755 F. Supp. 2d 1352, 1357 (2011) (internal quotation marks omitted) (quoting Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1073 (Fed. Cir. 2001)); cf. Sharp v. United States, 530 F.3d 1234, 1238 (Fed. Cir. 2009) (rejecting an interpretation of statutory text because it "would violate the canon that we must 'give effect, if possible, to every clause and word of a statute'" (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001))). In response, Plaintiff proposes that "'glass pieces' in parentheses could also simply refer to 'individual pieces of crushed glass that are visible across the surface' without the dimensional limitations." Pl.'s Reply at 9; see also id. at 10 ("[T]here is no indication . . . in the plain language . . . that the term 'glass pieces' is limited only to glass pieces as being larger than one-centimeter

---

[5] Commerce also represented to the court at oral argument that its internal style guide omits quotation marks and capitalized letters from parentheticals that define shorthand like "glass pieces." See Oral Arg. But because the style guide is neither publicly available nor in the record, the court does not rely on it in holding for Commerce.

in width.").  But the parenthetical's placement is indication enough: "(glass pieces)" comes after

the entire criterion, which includes the dimensional limitations, instead of in the middle of the

sentence.  See Safeguard Base Ops., LLC v. United States, 989 F.3d 1326, 1342 (Fed. Cir. 2021)

("[C]ourts must consider not only the bare meaning of each word but also the placement and

purpose of the language . . . ." (emphasis added) (internal quotation marks omitted) (quoting

Barela v. Shinseki, 584 F.3d 1379, 1383 (Fed. Cir. 2009))).  Lacking any reasonable alternative,

the court must interpret the text in a manner that gives effect to every word.[6]

    Unsupported by the plain text,[7] SMA Surfaces's stilted reading of the fourth criterion

cannot stand.  The third criterion of the crushed glass exclusion unambiguously defines "glass

---

[6] And even if the definition of "glass pieces" differed in ordinary meaning from "any single glass piece," the court must still adhere to the defined term in interpreting the QSP Orders.  Cf. Van Buren v. United States, 141 S. Ct. 1648, 1657 (2021) ("When 'a statute includes an explicit definition' of a term, 'we must follow that definition, even if it varies from a term's ordinary meaning.'" (quoting Tanzin v. Tanvir, 141 S. Ct. 486, 490 (2020))).

[7] The text makes the meaning of "glass piece" in the fourth criterion clear.  To the extent Commerce considered 19 C.F.R. § 351.225(k)(1) sources that evinced the anti-evasion intent motivating the scope language, the court concludes that those sources further support the Government and Cambria's position.  See Final Scope Ruling at 6 ("In addition to the plain language of the scope of the Orders, we examined the other information enumerated under 19 C.F.R. § 351.225(k)(1) . . . , and find that none of these sources undermine our analysis.").

Commerce initially adopted Cambria's proposed crushed glass exclusion language in order to exempt crushed glass surface products from the scope of the QSP Orders.  See supra p. 4. Commerce later narrowly tailored the initial language to the current four criteria in order to target a specific kind of crushed glass product while "address[ing] the potential for evasion" in the initial scope language.  See Scope Modification Mem. at 4, 12 (explaining that the initial "exclusion language added to the scope was intended to address these kinds of crushed glass products").

If the fourth criterion were to include any visible pieces of crushed glass, applying a three-inch distance requirement to 0.2–0.3 millimeter pieces of glass would allow surface products with predominantly finer-sized pieces of glass to qualify for the crushed glass exclusion.  As the Government and Cambria stress, that reading would undo Commerce's narrow tailoring in the Scope Modification Memorandum, where Commerce made clear its intentions to avoid evasion by "quartz glass" producers and to specifically exempt crushed glass surface products with

piece" to be a piece of crushed glass that is "visible across the surface [and] larger than one centimeter wide as measured at their widest cross-section." QSP Orders, 84 Fed. Reg. at 33,056. Interpreting "glass piece" to be a defined term "reconciles the text of the entire regulation, not simply isolated sentences" or phrases. Lengerich, 454 F.3d at 1370 (internal quotation marks omitted) (quoting Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1577 (Fed. Cir. 1995)). Because all subsequent references to "glass piece" incorporate the third criterion's dimensional requirements, the court holds that Commerce's construction of the scope language in the fourth criterion is consistent with the plain meaning and, therefore, in accordance with law.

## II. Substantial Evidence Supported Commerce's Inclusion of the Grey Concrete Leather and Andes Products, but Not the Twilight Product

Having established that criteria three and four are unambiguous, the court turns to the next question "of whether a product meets the unambiguous scope terms presents a question of fact reviewed for substantial evidence." Meridian Prods., 851 F.3d at 1382 (citing Novosteel SA v. United States, 284 F.3d 1261, 1269 (Fed. Cir. 2002)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" CS Wind Viet. Co. v. United States, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951)). "Commerce must explain the basis for its decisions; while its explanations do not have to be perfect, the path of Commerce's decision must be reasonably discernable to a reviewing court." NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319–20 (Fed. Cir. 2009) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Commerce's determination "must take into account whatever in the record fairly detracts from its weight," CS Wind Viet. Co., 340 U.S. at 477 (citation and internal quotation

recycled, ecofriendly aesthetics. SMA Surfaces's reading of the fourth criterion amounts to an attempt to diminish the QSP Orders by broadening the crushed glass exclusion.

marks omitted), and conclusory statements do "not meet . . . 'the obligation to address important factors raised by comments from petitioners and respondents,'" NMB Sing. Ltd., 557 F.3d at 1319.

Commerce's reasoning in the Final Scope Ruling states in relevant part:

> We find that the language in the scope of the Orders is dispositive with regard to [the three glass surface products]. . . . The third criterion of the crushed glass scope exclusion defines a "glass piece" as pieces of glass "larger than one centimeter wide as measured at their widest cross-section (glass pieces)." The fourth criterion then specifies that it is these one-centimeter glass pieces that must be at most three inches apart. . . .

> As explained above, the scope specifies that the distance between any single "glass piece" and the closest separate "glass piece" may not exceed three inches.  However, an examination of the pictures of the three glass surface products shows that they do not meet the crushed glass scope exclusion, because not all one centimeter "glass pieces" are within three inches of another one centimeter "glass piece" across the surface of the product.

Final Scope Ruling at 5–6.

This explanation tests the outer bounds of "reasonably discernible."  Commerce's only factual finding could be interpreted as nothing more than a mere conclusory recitation of criterion four.  Compare Final Scope Ruling at 6 ("[N]ot all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece' across the surface of the product."), with QSP Orders, 84 Fed. Reg. at 33,056 ("[T]he distance between any single glass piece and the closest separate glass piece does not exceed three inches."); see also Nucor Corp. v. United States, 44 CIT __, __, 461 F. Supp. 3d 1374, 1379 (2020) ("Commerce's discussion should not 'lack[] record citations supporting the agency's findings [and] . . . consist[] of conclusory statements . . . without any examples or citations to support those statements.'" (alterations in original) (quoting Hyundai Heavy Indus., Co. v. United States, 42 CIT __, __, 332 F. Supp. 3d 1331, 1349 (2018))).  What saves this factual finding from being a conclusory recitation is the reference to Commerce's "examination of the pictures."

Commerce's examination of the photographs that SMA Surfaces submitted is, therefore, at the heart of the dispute. SMA Surfaces argues that Commerce failed to properly consider the photographic evidence in the record that, in SMA Surfaces's estimation, shows that the three glass surface products qualify for the exclusion even under Commerce's read of the fourth criterion. In response, the Government and Cambria point to Commerce's express acknowledgment that its finding of fact is based on its "examination of the pictures" and citation to Exhibits 14–16 of the record. See Final Scope Ruling at 5–6 & nn.23–24. While Commerce is not required to detail every inferential step of its analysis, "the path of Commerce's decision" -- the first step of which is Commerce's review of photographic evidence -- must still be sufficiently detailed to be "reasonably discernable." NMB Sing. Ltd., 557 F.3d at 1319. Furthermore, "[u]nder the standard of review it must apply, the court cannot sustain an agency determination that relies, in whole or in part, upon an invalid finding of material fact." Guizhou Tyre Co. v. United States, 46 CIT __, __, 557 F. Supp. 3d 1302, 1317 (2022) (emphasis added) (evidence of a successful board election immediately after an unsuccessful one was insufficient to support Commerce's conclusion that those board members had been effectively "appointed" instead of elected).

This court has long reasoned that photographs in the agency record may constitute substantial evidence justifying Commerce's factual findings. See, e.g., Aristocraft of Am., LLC v. United States, 42 CIT __, __, 331 F. Supp. 3d 1372, 1380 (2018), as amended (Apr. 17, 2019) (photograph that gave rise to two competing and plausible inferences was substantial evidence for Commerce's determination of one of the two); Shandong Rongxin Imp. & Exp. Co. v. United States, 41 CIT __, __, 203 F. Supp. 3d 1327, 1341 (2017) (photographs of pencils manufactured abroad "are substantial evidence only of the fact that Dixon manufactured at least some pencils outside of the United States, at an unclear point in time," and did not preclude Commerce's finding

that the manufacturer also produced pencils in the United States); Zhaoqing New Zhongya Aluminum Co. v. United States, 37 CIT 1003, 1008–09, 929 F. Supp. 2d 1324, 1329 (2013) (a photograph taken in 2010 of a developed property was not substantial evidence justifying Commerce's conclusion that the lot was similarly developed in 2006); King Supply Co. v. United States, 35 CIT 21, 30, 2011 WL 52496, at *7 (Jan. 6, 2011), rev'd on other grounds, 674 F.3d 1343 (Fed. Cir. 2012) ("several photographs of pipe fittings produced by [the plaintiff] and used in structural applications" was substantial evidence justifying Commerce's finding that the plaintiff's "pipe fittings are used in structural applications"); Wash. Int'l Ins. Co. v. United States, 33 CIT 1023, 1030, 1034, 2009 WL 2460824, at *5, *8 (July 29, 2009) (photographs taken by the FDA constitute substantial evidence to support inferences relied upon by Commerce, even though "a number of Commerce's inferences from the record are tenuous"); see also United Steel & Fasteners, Inc. v. United States, 947 F.3d 794, 799–800 (Fed. Cir. 2020) ("pictures provided by US & F [that] clearly show the helical aspect of AREMA washers," when "taken together" with other evidence, constitute "substantial evidence . . . that US & F's washers are 'helical'").  The court now turns to undertaking a similar review of the photographs submitted by SMA Surfaces.[8]

### A. Substantial Evidence Supports Commerce's Inclusion of the Grey Concrete Leather and Andes products in the QSP Orders.

SMA Surfaces submitted photographs of the Grey Concrete Leather and Andes products as Exhibits 14 and 15 to its Scope Ruling Request, J.A. at 161–66, and stated that the photographs "demonstrate[]" that "all . . . 'large glass chip pieces' are not separated by more than 3 inches from the next 'large glass chip piece.'"  Scope Ruling Req. at 13.  Despite Plaintiff's intentions in submitting the photographs, the court holds that Exhibits 14 and 15 constituted substantial

---

[8] The pages of the Joint Appendix (Public Record), July 22, 2022, ECF No. 30, that contain the photographs referenced in the following paragraphs are also appended to this slip opinion.

evidence for Commerce's inclusion of the Grey Concrete Leather and Andes products within the scope of the QSP Orders.

"[A] reasonable mind might accept" Exhibits 14 and 15 "as adequate to support a conclusion" that -- in the absence of a ruler measuring the requisite distance -- certain of the circled glass pieces were more than three inches away from the nearest circled glass piece. CS Wind Viet. Co., 832 F.3d at 1373 (internal quotation marks omitted) (quoting Universal Camera, 340 U.S. at 477); see also J.A. at 162 (a reasonable mind may find the bottom right circled glass piece to be more than three inches away from the nearest glass piece); J.A. at 164 (same with regards to the upper left circled glass piece). SMA Surfaces, of course, submitted the photographs with the conviction that they proved the contrary. See Pl.'s Br. at 5. Given that the pictures do not include sufficient ruler measurements to clarify the distance between all the glass pieces, more than one competing inference regarding distance "seem[s] plausible. [But] [w]hat the court cannot do is direct Commerce to favor Plaintiff['s] preferred evidentiary inference over another reasonable inference." Aristocraft of Am., 331 F. Supp. 3d at 1380 (citing Mitsubishi Heavy Indus. Ltd. v. United States, 275 F.3d 1056, 1062 (Fed. Cir. 2001)). Furthermore, "that Commerce's method of calculating a particular piece of . . . data may not yield a precise calculation does not render its determination unsupported by substantial evidence." Jinxiang Hejia Co. v. United States, 35 CIT 1190, 1198, 2011 WL 3915675, at *7 (Sept. 7, 2011).

SMA Surfaces's argument that it did "not circle all the one-centimeter glass pieces depicted in the photograph, just a representative few to help the Department identify the chips," Pl.'s Reply at 13 (emphasis in original), also fails. Indeed, SMA Surfaces caveated in the record that "some of the large glass chips are circled for ease of identification," Scope Ruling Req. at 11, and raises in its Reply that it "did not circle all of the visible one-centimeter pieces, many of which were

obscured by the ruler," Pl.'s Reply at 13.  But once again, SMA Surfaces asks the court to draw

inferences in its favor, and once again, the court must decline.  As this court previously explained

in <u>Aristocraft of America</u>, which involved an analogous dispute over competing reasonable

inferences drawn from photographic evidence in the agency record:

> This issue ultimately boils down to a problem of proof for Plaintiffs.  Plaintiffs could have
> done much more to remove doubts about the photographs (and undermine any competing
> inferences). Better quality photos and better authentication would have helped, as would
> have affidavits . . . explaining what the photographs depicted. . . . Without the additional
> evidentiary proffer, Plaintiffs simply ask too much of the court to wade into fact finding on
> a sparse record.

<u>Aristocraft of Am.</u>, 331 F. Supp. 3d at 1380.  Ultimately, "[t]he burden of creating an adequate

record lies with [interested parties] and not with Commerce."  <u>Id.</u> (second alteration in original)

(internal quotation marks omitted) (quoting <u>QVD Food Co. v. United States</u>, 658 F.3d 1318, 1324

(Fed. Cir. 2011)).

SMA Surfaces also insists that Commerce should have issued supplemental questionnaires

prior to the Final Scope Ruling if it doubted the photographic evidence to be true or sufficient.  <u>See</u>

Pl.'s Br. at 2, 7–8, 11.  But there is no authority for Plaintiff's proposition.  Commerce may, in

certain circumstances, "determine[] that a response to a request for information" is deficient and

"shall, to the extent practicable, provide that person with an opportunity to remedy or explain the

deficiency."  19 U.S.C. § 1677m(d).  Yet § 1677m(d) is ultimately inapposite because SMA

Surfaces's exhibits were not "a response to a request for information" by Commerce but an

appendix to its own Scope Ruling Request.[9]  Without any other statute or regulation obligating

---

[9] Analogizing to § 1677m(d) would be similarly unconvincing.  "When a respondent provides
seemingly complete . . . information, § 1677m(d) does not require Commerce to issue a
supplemental questionnaire seeking assurances that the initial response was complete and
accurate." <u>ABB Inc. v. United States</u>, 42 CIT __, __, 355 F. Supp. 3d 1206, 1222 (2018). Exhibits
14 through 16 are sparse, yes, but they do not approach the level of incompleteness or inaccuracy
in prior cases mandating a supplemental questionnaire.  <u>See, e.g.</u>, <u>Hyundai Heavy Indus. Co. v.</u>

Commerce to ask for additional evidence before a final determination, the burden of developing

an adequate record falls on SMA Surfaces, not Commerce.  See Aristocraft of Am., 331 F. Supp.

3d at 1380.  Commerce's lack of supplemental questionnaires did not violate administrative

process, and Commerce's Final Scope Ruling, as it regards the Grey Concrete Leather and Andes

products, was supported by substantial evidence.[10]

> ### B.      Substantial Evidence Does Not Support Commerce's Inclusion of the Twilight Product in the QSP Orders.

SMA Surfaces submitted photographs of the Twilight product as Exhibits 16 to its Scope

Ruling Request, J.A. at 167–74, and stated that "Twilight has pieces of glass larger than 1 cm

across its surface, and these 1 cm glass pieces are all within 3 inches of another 1 cm or larger

glass piece."  Scope Ruling Req. at 13.  The court concludes that Exhibit 16 did not constitute

substantial evidence for Commerce's inclusion of the Twilight product within the scope of the

QSP Orders.

In contrast to Exhibits 14 and 15, no "reasonable mind might accept" Exhibit 16 "as

adequate to support a conclusion" that certain of the circled glass pieces were more than three

inches away from the nearest circled glass piece.  CS Wind Viet. Co., 832 F.3d at 1373 (internal

quotation marks omitted) (quoting Universal Camera, 340 U.S. at 477).  The first image in Exhibit

16 shows five circled pieces of crushed glass at least one centimeter wide.  See J.A. at 168.  The

second, third, and fourth images then prove with a ruler that the following pieces are all at most

---

United States, 44 CIT __, __, 485 F. Supp. 3d 1380, 1391–92 (2020) (holding that Commerce failed to issue a supplemental questionnaire after becoming aware of reporting deficiencies in a party's response); see also ABB Inc., 355 F. Supp. 3d at 1222 ("Commerce is not obligated to issue a supplemental questionnaire to the effect of, 'Are you sure?'").

[10] The additional detail in the Exhibit 16 photographs for Twilight, see J.A. at 167–74, further illustrates the point that SMA Surfaces failed to provide enough information in Exhibits 14 and 15 to compel Commerce to agree with its views.

three inches apart: (1) the upper middle and upper right pieces, see J.A. at 169; (2) the upper middle and lower middle pieces, see J.A. at 170; (3) the upper left and lower left pieces, see J.A. at 171. A reasonable mind, relying on the ruler in the photographs, must conclude that each circled "glass piece" in the first image is within three inches of another "glass piece." Commerce's reason for citing to Exhibit 16 to substantiate the proposition that "not all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece across the surface of the product," Final Scope Ruling at 6 & n.24, is not "reasonably discernible" to the reviewing court, NMB Sing. Ltd., 557 F.3d at 1319.

Commerce may have, as the Government and Cambria explain extensively in their briefing, considered Twilight's glass pieces to not be sufficiently "across the surface of the product" because the photographs may be confined to certain areas of the surface in a manner that contravenes the intent of the crushed glass exclusion. See Def.-Inter.'s Br. at 15, 19; Def.'s OAQ Resp. at 8–10; Def.-Inter.'s OAQ Resp. at 7–8. They note that Commerce found that "not all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece' across the surface of the product." Final Scope Ruling at 6 (emphasis added); see also Def.-Inter.'s Br. at 19. But once again, the substantial evidence standard, while significantly deferential, requires more than a passing reference without further analysis. "Commerce's reasoning [needs] not be a model of clarity." Bergerac, N.C. v. United States, 24 CIT 525, 540, 102 F. Supp. 2d 497, 540 (2000). But "[t]here are no findings and no analysis here to justify the choice made, no indication of the basis on which [Commerce] exercised its expert discretion." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 167 (1962). And it is well established that "[p]ost-hoc rationalizations of agency actions first advocated by counsel in court may not serve as the basis for sustaining the agency's determination." U.H.F.C. Co. v. United States, 916 F.2d 689, 700 (Fed. Cir. 1990).

Without any further explanation of what about Exhibit 16 failed to justify Twilight's compliance

with the fourth criterion, Commerce's decision is simply not "obvious in light of the determination

as a whole." Id.   Exhibit 16, therefore, does not constitute substantial evidence, and the court

must remand to Commerce for reconsideration.[11]

### III.    Commerce's Consideration of the 19 C.F.R. § 351.225(k)(1) Factors Was in Accordance with Law

Finally, SMA Surfaces argues that Commerce's consideration of the 19 C.F.R.

§ 351.225(k)(1) factors was not in accordance with law because it failed to address record evidence

from Cambria's Scope Clarification Request, see Pl.'s Br. at 11–12, and improperly relied on a

prior scope determination, see id. at 13.  The code states in relevant part:

> [T]he Secretary will take into account the following:
>
> > (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.

19 C.F.R. § 351.225(k)(1) (2021).  Commerce, in turn, explained in its Final Scope Ruling:

> We find that the language in the scope of the Orders is dispositive with regard to [the three glass surface] products. . . .

---

[11] Recall that because Commerce limited its "examination" to the "pictures of the glass surface products," Final Scope Ruling at 6, the court's substantial evidence inquiry is limited to only photographic evidence.  The only other images of the Twilight product are in Exhibit 17 to the Scope Ruling Request -- which compares Twilight and IceStone's Snow Flurry product -- and the generic photo of the Twilight product in the body of the Scope Ruling Request.  But because neither photograph includes a ruler or scale, Commerce could not have used them to reach a determination regarding distance.  See Scope Ruling Req. at 4; J.A. at 175–76.

SMA Surfaces also argues that Commerce did not evaluate the photograph in Exhibit 17, J.A. at 175–76, which was "an important piece of record evidence" that showed the Twilight product to be "materially indistinguishable" from "Snow Flurry," a surface product by IceStone LLC.  Pl.'s Reply at 16.  In 2019, Cambria had included images of IceStone surface products in its request to Commerce for a scope modification as examples of products that should be exempt from the QSP Orders.  Scope Clarification Req. at 4, 6 & Ex. 1.  But because Exhibit 16, Commerce's cited basis for including Twilight, did not constitute substantial evidence, the court does not decide the question of whether Commerce erred in not addressing Exhibit 17.

> In addition to the plain language of the scope of the <u>Orders</u>, we examined the other information enumerated under 19 CFR 351.225(k)(1), including the description of the merchandise contained in the Petitions, the record from the investigations, the final report of the International Trade Commission, as well as prior scope rulings, and find that none of these sources undermine our analysis.  Moreover, our determination here that SMA Surfaces' products do not meet the terms of the crushed glass scope exclusion is consistent with our finding in the Panmin scope ruling, where we also found that, to meet the terms of the crushed glass scope exclusion, there must be visible one centimeter pieces of glass within three inches of another one centimeter piece of glass across the surface of the slab. Specifically, we stated that "an examination of the pictures of the three "ZZ" series glass products shows that they do not meet the crushed glass scope exclusion, because not all one centimeter 'glass pieces' are within three inches of another 'glass piece' across the surface of the product."

Final Scope Ruling at 6.

Commerce's consideration of the § 351.225(k)(1) factors was in accordance with law.[12]

Plaintiff first insists that Commerce "ignored key record evidence" in failing to address alleged visual similarities between examples of glass surface products appended to Cambria's Scope Clarification Request and SMA Surfaces's products.  <u>See</u> Pl.'s Br. at 11.  But it is unclear why comparisons of digital images without any scale or ruler would be relevant to determining compliance with the fourth criterion of the crushed glass exclusion, which expressly requires a <u>quantitative</u> determination about the distance between glass pieces; Commerce may not use record evidence to "interpret orders contrary to their terms." <u>Duferco Steel</u>, 296 F.3d at 1097 (internal quotation marks omitted) (quoting <u>Wheatland Tube Co.</u>, 161 F.3d at 1371).  Simply because

---

[12] Because Commerce had determined that the scope language was dispositive, Cambria raises the threshold issue of whether SMA Surfaces may challenge Commerce's consideration of the § 351.225(k)(1) factors at all.  <u>See</u> Def.-Inter.'s Br. at 20–21.  But because Commerce considered evidence under these factors, <u>see</u> Final Scope Ruling at 6, and insofar as its consideration of the factors bears on the reasonableness of Commerce's final determination, it is subject to judicial review.  <u>Cf.</u> <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 89 (1943) (reasoning that an agency's "action must be judged by the standards which the [agency] itself invoked").

Commerce found no detracting evidence regarding criterion four, Final Scope Ruling at 6, it had

no such evidence to address, CS Wind Viet. Co., 832 F.3d at 1373.

SMA Surfaces next takes aim at Commerce's citation to a prior scope determination ruling

involving the same crushed glass exclusion to the QSP Orders. See Final Scope Ruling at 6 (citing

Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface

Products from the People's Republic of China: Request by Deyuan Panmin International Limited

and Xiamen Deyuan Panmin Trading Co., Ltd. (Dep't Com. Feb. 20, 2020) ("Panmin")).

Plaintiff's position "is only that Commerce unlawfully relied on the Panmin ruling that adopted a

flawed interpretation of the fourth criterion." Pl.'s OAQ Resp. at 11. The challenge relies on this

court's ruling in Star Pipe Products v. United States, which reasoned that a prior scope

determination that "appear[ed] to be on point" did not "suggest that the support it lends is

unqualified; to the contrary, the support [a prior scope ruling] provides is limited by the errors in

that ruling." 44 CIT __, __, 463 F. Supp. 3d 1366, 1377 (2020). Furthermore, because the

requester in Panmin did not appeal the determination and it was never reviewed or sustained by

the Court of International Trade, SMA Surfaces contends that its weight as a "prior scope

determination" under § 351.225(k)(1) is not binding and diminished. See Pl.'s Reply at 21.

This final argument also does not withstand scrutiny. As an initial matter, the text of the

code makes no distinction based on whether a prior scope determination has been appealed to the

Court of International Trade; any weighing is left to Commerce's discretion and our deferential

standard of review. But more importantly, Panmin suffers from no such clear "error[]." Star Pipe

Prods., 463 F. Supp. 3d at 1377. Commerce determined in Panmin that criterion four applied to

pieces of crushed glass wider than one centimeter. Today's ruling holds that interpretation to be

consistent with plain meaning. That alone distinguishes this case from Star Pipe Products. See id.

(identifying the "error[]" to be the prior scope determination's "same reliance on the description of 'pipe fittings' in the ITC Report that the court finds to be misplaced").  Commerce's citation to Panmin in the Final Scope Ruling, which provided belt-and-suspenders support for its plain text interpretation of criterion four, was therefore in accordance with law.[13]  And because Commerce's determination as to the Grey Concrete Leather and Andes products was also justified by substantial evidence, the Final Scope Ruling is sustained insofar as it relates to those two glass surface products.  See 19 U.S.C. § 1516a(b)(1)(B)(i).

## CONCLUSION

Having concluded that criterion four unambiguously refers to pieces of crushed glass wider than one centimeter, the court holds that (1) Commerce's inclusion of Grey Concrete Leather and Andes in the QSP Orders was justified by substantial evidence and in accordance with law and, therefore, is sustained; and (2) Commerce's inclusion of Twilight in the QSP Orders was not justified by substantial evidence and must be remanded for reconsideration.  The court remands to Commerce for further proceedings consistent with this opinion.  Commerce shall file with this court and provide to the parties its remand results within 90 days of the date of this order.  Thereafter, the parties shall have 30 days to submit briefs addressing the revised Final Scope Ruling to the court, and the parties shall have 15 days thereafter to file reply briefs with the court.

**SO ORDERED.**

/s/      *Gary S. Katzmann*
Judge

Dated: <u>January 12, 2023</u>
New York, New York

---

[13] Commerce also did not suggest that the glass surface products in Panmin were factually comparable to those in the instant Final Scope Ruling.  Contra Pl.'s Reply at 22.  Plaintiff's alternative argument, abandoned in later briefing, that Commerce should have "provided . . . record evidence demonstrating that the products at issue in that case were comparable" is unavailing for that reason alone.  Id.

# APPENDIX

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

———————————————————————— x
                                    :

SMA SURFACES, INC.,            :

           Plaintiff,      :

      v.                :      Case No. 21-00399

                        :

UNITED STATES,          :      **PUBLIC VERSION**

                        :

           Defendant,   :

           and          :

CAMBRIA COMPANY LLC,   :

           Defendant-Intervenor.  :
———————————————————————— x

## JOINT APPENDIX

Erik D. Smithweiss*
Jordan C. Kahn
Kavita Mohan
Michael S. Holton

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*707 Wilshire Boulevard
Suite 4150
Los Angeles, CA 90017-3720
(213) 624-1970

-and-

1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiff SMA Surfaces, Inc.
(f/k/a Polarstone US)*

Dated: July 22, 2022

# EXHIBIT 14



Barcode:4115803-02 C-570-085 SCO - Scope Inquiry  -  SMA Crushed Glass

# EXHIBIT 15







# EXHIBIT 16















Barcode:4115803-02 C-570-085 SCO - Scope Inquiry  -  SMA Crushed Glass

# EXHIBIT 17



ICESTONE
← SNOW FLURRY

TWILIGHT ↓