A-570-084,<br>
C-570-085<br>
Remand<br>
Slip Op. 23-4<br>
**Public Document**<br>
E&C/OIX:  AM

*SMA Surfaces, Inc. (f/k/a Polarstone US) v. United States*,
Consol. Court No. 21-00399, Slip Op. 23-4 (CIT January 12, 2023)
**Quartz Surface Products from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court) issued in *SMA Surfaces, Inc. (f/k/a Polarstone US) v. United States*, Consol. Court No. 21-00399, Slip Op. 23-4 (CIT January 12, 2023) (*Remand Order*).  This action arises out of Commerce's July 15, 2021 final scope ruling in which we determined that SMA Surfaces, Inc.'s (SMA Surfaces) crushed glass products are covered by the scope of the antidumping duty (AD) and countervailing duty (CVD) orders on quartz surface products (QSP) from the People's Republic of China (China).[1]  On January 12, 2023, the Court upheld Commerce's:  (1) interpretation of the term "glass piece" in the language of scope related to the third and fourth criteria of the crushed glass scope exclusion; and (2) determination that SMA Surfaces' Grey Concrete Leather and Andes products were within the scope of the *Orders*.[2]  However, the Court remanded to Commerce its inclusion of SMA Surfaces' Twilight product within the scope of the

---

[1] *See* Memorandum, "Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China:  SMA Surfaces," dated July 15, 2021 (Final Scope Ruling); *see also See Certain Quartz Surface Products from the People's Republic of China:  Antidumping and Countervailing Duty Orders*, 84 FR 33053 (July 11, 2019) (*Orders*).
[2] *See Remand Order*, Consol. Court No. 21-00399, Slip Op. 23-4 at 9 and 20.

*Orders* for further reconsideration and explanation.[3] Accordingly, in these final results of redetermination, Commerce provides further explanation of why SMA Surfaces' Twilight product is within the scope of the *Orders* under 19 CFR 351.225(k)(1).[4]

## II.   SCOPE OF THE *ORDERS*

The merchandise covered by the *Orders* is certain quartz surface products. Quartz surface products consist of slabs and other surfaces created from a mixture of materials that includes predominately silica (*e.g.*, quartz, quartz powder, cristobalite) as well as a resin binder (*e.g.*, an unsaturated polyester). The incorporation of other materials, including, but not limited to, pigments, cement, or other additives does not remove the merchandise from the scope of the *Orders*. However, the scope of the *Orders* only includes products where the silica content is greater than any other single material, by actual weight. Quartz surface products are typically sold as rectangular slabs with a total surface area of approximately 45 to 60 square feet and a nominal thickness of one, two, or three centimeters. However, the scope of these *Orders* includes surface products of all other sizes, thicknesses, and shapes. In addition to slabs, the scope of these *Orders* includes, but is not limited to, other surfaces such as countertops, backsplashes, vanity tops, bar tops, work tops, tabletops, flooring, wall facing, shower surrounds, fire place surrounds, mantels, and tiles. Certain quartz surface products are covered by the *Orders* whether polished or unpolished, cut or uncut, fabricated or not fabricated, cured or

---

[3] *Id*. at 23.
[4] While Commerce revised this regulation in 2021, the revision does not apply to this remand. *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 FR 52300 (September 20, 2021). Hence, throughout this remand, all citations to 19 CFR 351.225 refer to the previous version of the regulation.

uncured, edged or not edged, finished or unfinished, thermoformed or not thermoformed, packaged or unpackaged, and regardless of the type of surface finish.

In addition, quartz surface products are covered by the *Orders* whether or not they are imported attached to, or in conjunction with, non-subject merchandise such as sinks, sink bowls, vanities, cabinets, and furniture.  If quartz surface products are imported attached to, or in conjunction with, such non-subject merchandise, only the quartz surface product is covered by the scope.

Subject merchandise includes material matching the above description that has been finished, packaged, or otherwise fabricated in a third country, including by cutting, polishing, curing, edging, thermoforming, attaching to, or packaging with another product, or any other finishing, packaging, or fabrication that would not otherwise remove the merchandise from the scope of the *Orders* if performed in the country of manufacture of the quartz surface products.

The scope of the *Orders* does not cover quarried stone surface products, such as granite, marble, soapstone, or quartzite.  Specifically excluded from the scope of the *Orders* are crushed glass surface products.  Crushed glass surface products must meet each of the following criteria to qualify for this exclusion:  (1) the crushed glass content is greater than any other single material, by actual weight; (2) there are pieces of crushed glass visible across the surface of the product; (3) at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide as measured at their widest cross-section (glass pieces); and (4) the distance between any single glass piece and the closest separate glass piece does not exceed three inches.

The products subject to the scope are currently classified in the Harmonized Tariff Schedule of the United States (HTSUS) under the following subheading:  6810.99.0010.  Subject

merchandise may also enter under subheadings 6810.11.0010, 6810.11.0070, 6810.19.1200, 6810.19.1400, 6810.19.5000, 6810.91.0000, 6810.99.0080, 6815.99.4070, 2506.10.0010, 2506.10.0050, 2506.20.0010, 2506.20.0080, and 7016.90.1050.  The HTSUS subheadings set forth above are provided for convenience and U.S. Customs purposes only.  The written description of the scope is dispositive.

### III. BACKGROUND

Commerce issued the Final Scope Ruling on July 15, 2021, finding that all three of SMA Surfaces' products (*i.e.*, Grey Concrete Leather, Andes, and Twilight) were covered by the scope of the *Orders*, because the pictures SMA Surfaces provided did not demonstrate that "all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece, across the surface of the product."[5]

In its *Remand Order*, the Court held that Commerce's inclusion of the Twilight product in the *Orders* was not justified by substantial evidence because pictures of the Twilight product appeared to demonstrate the existence of one centimeter glass pieces within three inches of another glass piece.  Therefore, the Court held that Commerce's rationale for citing these pictures as evidence that the Twilight product is covered by the *Orders* was not reasonably discernible.  The Court also remanded for further explanation and reconsideration Commerce's statement that the glass pieces of the Twilight product were not "across the surface of the product" such that the product met the fourth criterion of the crushed glass scope exclusion.[6]

### III. ANALYSIS

The crushed glass scope exclusion specifies that, to qualify for the exclusion, crushed glass surface products must have crushed glass as the predominant ingredient by weight, have

---

[5] *See* Final Scope Ruling at 6.
[6] *See Remand Order*, Consol. Court No. 21-00399, Slip Op. 23-4 at 23-24.

pieces of glass (at least some of which are one centimeter width at their widest cross-section, defined as a "glass piece") visible across the surface of the product, and have "glass pieces" within three inches of another "glass piece" across the surface of the product.  In the Final Scope Ruling, Commerce found that "{a}n examination of the pictures of the three glass surface products shows that they do not meet the crushed glass scope exclusion, because not all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece' across the surface of the product."[7]  The third criterion of the crushed glass scope exclusion states that "at least some of the individual pieces of crushed glass that are visible *across the surface* are larger than one centimeter wide as measured at their widest cross-section (glass pieces)."[8]  This criterion builds on the language of the second criterion of the scope exclusion, which states that there must be "pieces of crushed glass visible *across the surface of the product*."[9]  Finally, the fourth criterion states that the distance between any single "glass piece" and the closest separate "glass piece" cannot exceed three inches.  Therefore, for a product to meet the criteria of the crushed glass scope exclusion, the plain language of the scope specifies that interested parties must demonstrate that one centimeter "glass pieces" are within three inches of another one centimeter "glass piece" across the surface of the product.

Commerce finds that the photographic exhibits SMA Surfaces submitted concerning the Twilight product fail to demonstrate that the product meets the criteria of the crushed glass scope exclusion.  In Exhibit 16 of its Scope Ruling Request, SMA Surfaces provided photographs to demonstrate that there were one centimeter glass pieces within three inches of another glass piece for the Twilight product.[10]  However, because SMA Surfaces only submitted pictures of a

---

[7] *See* Final Scope Ruling at 6.
[8] *Id.* at 3 (emphasis added).
[9] *Id.* (emphasis added).
[10] *See* SMA Surfaces' Letter, "Scope Ruling request," dated April 28, 2021 (Scope Ruling Request), at Exhibit 16.

portion of a Twilight slab, SMA Surfaces failed to demonstrate that its Twilight product meets the criteria of the crushed glass scope exclusion, which require that there be one centimeter glass pieces within three inches of another one centimeter glass piece _across the surface of the product_.  Specifically, to demonstrate that a product meets the plain language of the crushed glass scope exclusion, an interested party would have to provide photographic evidence of all of the product's surface, and possibly multiple examples to prove that this is normally a product that meets the requirements of the exclusion.  For example, if Commerce were provided with detailed pictures or video of three entire slabs, with all four edges and all six "sides" (front, back and each edge/side) present, such photographic or video evidence might satisfy the requirements to prove such an exclusion, but it would definitely be a case-specific analysis.

In this case, SMA Surfaces only provided pictures of a subsection of a larger Twilight product (only one edge is present in the pictures provided); thus, it failed to demonstrate that the Twilight product met the "across the surface of the product" criterion of the crushed glass scope exclusion.[11]  Therefore, we continue to find that SMA Surfaces' Twilight product is within the scope of the _Orders_.

Finally, we find that our determination regarding SMA Surfaces' Twilight product is consistent with Commerce's other scope ruling regarding crushed glass surface products.  In the Panmin Scope Ruling requested by Deyuan Panmin International Limited and Xiamen Deyuan Panmin Trading Co., Ltd., Commerce noted that the criterion "across the surface of the product" of the crushed glass scope exclusion must also be met for the product at issue in that inquiry to be excluded from the scope.[12]  Specifically, we stated "an examination of the pictures of the

---

[11] _Id_.
[12] _See_ Memorandum, "Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China:  Request by Deyuan Panmin International Limited and Xiamen Deyuan Panmin Trading Co., Ltd.," dated February 20, 2020 (Panmin Scope Ruling).

three 'ZZ' series glass products shows that they do not meet the crushed glass scope exclusion, because not all one centimeter 'glass pieces' are within three inches of another 'glass piece' *across the surface of the product*."[13]  Similarly, because SMA Surfaces' photographic exhibits failed to demonstrate that its Twilight product's glass pieces extend across the surface of the product, we continue to find that SMA Surfaces' Twilight product is covered by the scope of the *Orders*.

## IV.   INTERESTED PARTY COMMENTS

On March 8, 2023, Commerce released the Draft Results of Redetermination to all interested parties and invited parties to comment.[14]  On March 22, 2023, we received comments from SMA Surfaces and Cambria Company LLC (Cambria), the petitioner in this proceeding.[15]  These comments are summarized below.

*SMA Surfaces' Comments*:

- There is no evidence on the record that suggests the photographs of Twilight are not representative of the entire surface of the product; therefore, Commerce is impermissibly basing its determination on speculation.[16]
- There is nothing in the history of the investigation or the plain language of the scope that states that, in order to meet the definition of "across the surface of the product," a party would need to provide images of the four edges and six sides of the product.  Commerce has created an impossibly high standard without any basis in the record of the investigation or the plain language of the scope.[17]
- There are no prior scope rulings that define what Commerce claims is required to meet the "across the surface of the product" requirement of the crushed glass scope exclusion.  Commerce only previously noted that the photographs provided did not show that there

---

[13] *Id.* at 5 (emphasis added).
[14] *See* Draft Results of Redetermination Pursuant to Court Remand, *SMA Surfaces, Inc. (F/K/A Polarstone US) v. United States*, Consol. Court No. 21-0039, Slip Op. 23-4 (CIT January 12, 2023), dated March 14, 2023 (Draft Results of Redetermination).
[15] *See* SMA Surfaces' Letter, "Comments on Draft Results of Redetermination, CIT Court No. 21-0039, Slip Op. 23-4 (January 12, 2023)," dated March 22, 2023 (SMA Surfaces' Comments); *see also* Cambria's Letter, "Comments on Draft Remand Redetermination," dated March 22, 2023 (Cambria's Comments).
[16] *See* SMA Surfaces' Comments at 2 (citing *Star Pipe Prod. v. United States*, 537 F. Supp. 3d 1362, 1373 (CIT 2021)).
[17] *Id.* at 3.

7

- are one centimeter glass pieces within three inches of another glass piece "across the surface of the product."[18]
- If Commerce required additional photographs of the Twilight product, Commerce could have issued a supplemental questionnaire in either the underlying scope ruling proceeding or in this remand redetermination. However, Commerce did not do so and Cambria has also not provided any record evidence demonstrating that the images provided are not representative of the entire product.[19]
- The Court in its *Remand Order* did not state that Commerce providing further explanation of what it meant by "across the surface of the product" would be sufficient here, and without additional record evidence, it is not. Therefore, Commerce should reverse its position and find that the Twilight product is excluded from the scope because it meets the terms of the crushed glass scope exclusion.[20]

*Cambria's Comments*:

- Commerce in its Draft Results of Redetermination provided the additional analysis required by the Court, explaining that SMA Surfaces failed to demonstrate that the Twilight product meets the terms of the crushed glass scope exclusion.[21]
- SMA Surfaces only provided pictures of a subsection of the larger Twilight product and, thus, failed to demonstrate that the Twilight product met the "across the surface of the product," criterion of the crushed glass scope exclusion.[22]
- Commerce also explained that its determination was consistent with the agency's other scope ruling regarding crushed glass surface products, in which it noted that the criterion "across the surface of the product" must be met for the product at issue to be excluded from the scope.[23]
- There is an additional basis to find that SMA Surfaces' Twilight product failed to meet the crushed glass scope exclusion, in that the pieces of glass in its products are not "visible" because they cannot be readily seen.[24]
- The glass pieces in SMA Surfaces' merchandise appear designed to be invisible. SMA Surfaces describes its glass pieces as "highly translucent" or as resembling "milk glass," meaning these glass pieces are simply plain white glass that are not readily apparent when placed on slabs with a white background.[25]
- The glass pieces in SMA Surfaces' merchandise do not meet the visibility criteria of the crushed glass scope exclusion in the manner the petitioner envisioned during the investigation. Rather, SMA Surfaces' products disguise the glass pieces contained in them as best as they can. Therefore, Commerce should find that the Twilight product

---

[18] *Id*.
[19] *Id*.
[20] *Id*.
[21] *See* Cambria's Comments at 3.
[22] *Id*. at 4.
[23] *Id*. (citing Panmin Scope Ruling at 5).
[24] *Id*. at 5.
[25] *Id*. (citing Scope Ruling Request at 10 and Exhibit 16).

fails to meet the crushed glass scope exclusion because it does not contain visible pieces of crushed glass.[26]

**Commerce's Position:**

For the reasons provided in the Draft Results of Redetermination, we continue to find that SMA Surfaces' Twilight product does not meet the terms of the crushed glass scope exclusion. We disagree with SMA Surfaces that we did not comply with the Court's directions in its *Remand Order*. The Court stated that Commerce may have considered Twilight's glass pieces "to not be sufficiently 'across the surface of the product,' … but that the substantial evidence standard … requires more than a passing reference without further analysis."[27]  In response to the Court, Commerce has now provided additional analysis explaining why the photographs of SMA Surfaces' Twilight product demonstrate that the product does not meet the terms of the crushed glass scope exclusion.

We disagree with SMA Surfaces that there is nothing on the record to suggest that the photographs of Twilight are not representative of the entire surface of the product, such that Commerce's determination is based on speculation.[28]  As Commerce explained under the "Analysis" section, above, for a product to meet the criteria of the crushed glass scope exclusion, the plain language of the scope specifies that interested parties must demonstrate that one centimeter "glass pieces" are within three inches of another one centimeter "glass piece" across the surface of the product. Here, SMA Surfaces did not meet this requirement because none of the provided photographs in Exhibit 16 capture the entire (or even, it appears, most of the)

---

[26] *Id.* at 5-6 (citing Scope Ruling Request at Exhibit 3 (containing Cambria's Letter, "Request for Scope Clarification," dated March 1, 2019)).
[27] *See Remand Order*, Consol. Court No. 21-00399, Slip Op. 23-4 at 23.
[28] *See* SMA Surfaces' Comments at 2-3.

surface of the product.²⁹  Each photo in Exhibit 16 only provides Commerce with an image of a subsection of the Twilight slab.³⁰  At most, the collection of photos provides us with a select picture of one part of a single Twilight product – certainly not a comprehensive collection of images covering the entire surface area of one QSP, much less a collective representation of a few examples of the Twilight QSP.

Notably, the images that were provided to Commerce were not individually numbered, no key was provided, and SMA Surfaces did not provide a description of the location(s) on the slab at issue that were captured in the supplied images.³¹  Accordingly, the agency is left wondering how SMA Surfaces believes that the images on the record satisfy the literal words of the plain language of the scope exclusion.  Even if the images reflected an entire Twilight QSP product, which they do not, Commerce would normally require that images of more than one single product be provided to support a claim that such a model was representative of excluded merchandise.  In this regard, SMA Surfaces simply did not meet such a fundamental requirement.

For these reasons, we find that SMA Surfaces failed to demonstrate that the Twilight product meets the "across the surface of the product" criterion of the crushed glass scope exclusion, that the Twilight product does not meet the terms of the crushed glass scope exclusion, and that the Twilight product is covered by the scope of the *Orders*.³²

Further, we disagree with SMA Surfaces that neither the history of the investigation nor the plain language of the scope requires a party to provide images of all of a product's surfaces to

---

²⁹ *See* Scope Ruling Request at Exhibit 16; *see also QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (*QVD*).
³⁰ *See* Scope Ruling Request at Exhibit 16.
³¹ *Id*.
³² *Id*.

meet the terms of the crushed glass scope exclusion. The phrase "across the surface of the product" has been a part of the crushed glass scope exclusion scope since the less-than-fair-value investigation. In these final results of redetermination, at the Court's direction, Commerce provides further explanation regarding this scope language. The phrase "across the surface of the product" implies a broad and comprehensive examination of the product's surface. The plain language of the scope requires Commerce to review the product's entire surface area, not just the surface area of a select portion of the product. Therefore, in order to demonstrate that the "across the surface of the product" requirement has been met, Commerce requires evidence demonstrating that the product meets the terms of the crushed glass scope exclusion across the entirety of the product. As stated in the "Analysis" section above, this can only be done by providing Commerce with "evidence of all of the product's surface, and possibly multiple examples, to prove that this is normally a product that meets the requirements of the exclusion." Thus, Commerce's interpretation of the "across the surface of the product" requirement of the crushed glass scope exclusion is based on the plain language of the scope exclusion to ensure that producers of Chinese QSP do not manipulate the record through the use of select images to convince the agency that exclusion is warranted, when fact the scope of the *Orders* applies to the merchandise.

We also disagree with SMA Surfaces' suggestion that the lack of prior scope rulings defining the "across the surface of the product" requirement of the crushed glass scope exclusion undermines Commerce's interpretation of this language, given that this interpretation is simply a restatement of the plain language of the crushed glass scope exclusion.[33] Moreover, regarding the Panmin Scope Ruling specifically, we note that Commerce in that inquiry made it clear that

---

[33] *See* SMA Surfaces' Comments at 3.

the photographs provided in that case were not sufficient to meet the requirement, noting that the criterion "across the surface of the product" of the crushed glass scope exclusion must also be met for the product at issue to be excluded from the scope.[34]

Finally, there is no basis to SMA Surfaces' claim that Commerce should have issued supplemental questionnaires or reopened the record of this remand to obtain additional information regarding the Twilight product.[35]  The Court in *SMA Surfaces* directly addressed this argument, holding that the burden of developing the record lay with SMA Surfaces, not Commerce.  Specifically, the Court stated:

> SMA Surfaces also insists that Commerce should have issued supplemental questionnaires prior to the Final Scope Ruling if it doubted the photographic evidence to be true or sufficient.  *See* Pl.'s Br. at 2, 7-8, 11.  But there is no authority for Plaintiff's proposition.  Commerce may, in certain circumstances, "determine{} that a response to a request for information" is deficient and "shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  Yet § 1677m(d) is ultimately inapposite because SMA Surfaces's exhibits were not "a response to a request for information" by Commerce but an appendix to its own Scope Ruling Request.  Without any other statute or regulation obligating Commerce to ask for additional evidence before a final determination, the burden of developing an adequate record falls on SMA Surfaces, not Commerce.  *See Aristocraft of Am.*, 331 F. Supp. 3d at 1380.[36]

The U.S. Court of Appeals for the Federal Circuit has also repeatedly held that the burden of creating an adequate record lies with interested parties, and not with Commerce.[37]  The photographs SMA Surfaces provided in the Scope Ruling Request at Exhibit 16 are subsections of a larger slab; therefore, they do not show that all "glass pieces" <u>across the surface of the product</u> are within three inches of each other.  As a result, we continue to determine that SMA

---

[34] *See* Panmin Scope Ruling at 5.
[35] *See* SMA Surfaces' Comments at 3-4.
[36] *See Remand Order*, Consol. Court No. 21-00399, Slip Op. 23-4 at 22-23.
[37] *See QVD*, 658 F.3d at 1324; and *Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993).

Surfaces failed to provide evidence demonstrating that its Twilight product meets the plain language of the crushed glass scope exclusion.

Finally, we acknowledge that Cambria argues that SMA Surfaces attempted to reduce the visibility of the glass pieces in the Twilight product as much as possible, and that such efforts are relevant to our analysis. However, because we are basing our determination on the "across the surface of the product" criterion of the crushed glass scope exclusion, we do not believe the efforts taken by SMA Surfaces with respect to the visibility of the glass pieces in the Twilight QSP are of significance to these final results of redetermination. Therefore, we are not addressing those efforts on remand.

## V. FINAL RESULTS OF REDETERMINATION

Pursuant to the Court's ruling in its *Remand Order*, Commerce has provided further analysis regarding SMA Surfaces' Twilight product and explanation of why Commerce continues to determine that this product does not meet the terms of the crushed glass scope exclusion. As a result, Commerce continues to find that SMA Surfaces' Twilight product is within the scope of the *Orders*.

4/11/2023

X 

Signed by: LISA WANG

Lisa W. Wang  
Assistant Secretary  
 for Enforcement and Compliance