UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| SMA SURFACES, INC. (F/K/A POLARSTONE US), ) ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES, ) ) Defendant, ) ) and ) ) CAMBRIA COMPANY LLC, ) ) Defendant-Intervenor. ) | Court No. 21-00399 |

**<u>ORDER</u>**

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, all responses thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety, and it is further

ORDERED that final judgment is entered in favor of the United States.

Dated: _____, 2023         _____
New York, NY                                              JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| SMA SURFACES, INC. (F/K/A POLARSTONE US), <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CAMBRIA COMPANY LLC, <br><br> Defendant-Intervenor. | Court No. 21-00399 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS ON REMAND RESULTS**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff SMA Surfaces Inc. (f/k/a Polarstone US) (SMA) concerning the Department of Commerce's remand results in this matter. Final Results of Redetermination Pursuant to Court Remand (Apr. 11, 2023), ECF No. 44 (Remand Results). We respectfully request that the Court sustain the remand results because they comply with the Court's remand order, and because they are supported by substantial evidence and otherwise lawful.

**BACKGROUND**

On April 28, 2021, Commerce received a scope ruling request from SMA, an importer of quartz surface products from China. *See* Letter, "Antidumping Duty Order on Certain Quartz Surface Products from the People's Republic of China: Scope Ruling request" (Apr. 28, 2021) (P.R. 1-2; C.R. 1-2) (SMA Scope Request). On July 15, 2021, Commerce issued a scope ruling

determining that three of SMA's products (Grey Concrete Leather, Andes, and Twilight) were covered by the antidumping and countervailing duty orders concerning quartz surface products. Commerce determined that the products did not qualify for the orders' crushed glass exclusion because the information that SMA provided in its scope request did not demonstrate that "all one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece,' across the surface of the product." Memorandum, "Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: SMA Surfaces," at 5-6 (July 15, 2021) (P.R. 14) (Final Scope Ruling); *see generally Certain Quartz Surface Products from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 33,053, 33,055-56 (July 11, 2019) (*Orders*).

On September 9, 2021, SMA filed this action against the United States to challenge Commerce's final scope ruling. *See* Compl. at 1, ECF No. 10 (Sept. 9, 2021). On January 12, 2023, the Court sustained, in part, and remanded, in part, Commerce's determination for further reconsideration and explanation. *See SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) (*SMA Surfaces*). In its remand order, the Court sustained: (1) Commerce's interpretation of the scope term "glass piece" in the language related to the third and fourth criteria of the crushed glass exclusion and (2) Commerce's determination that SMA's Grey Concrete Leather and Andes products were within the orders' scope. *See id.* at 1271-80. The Court, however, also remanded Commerce determination with respect to SMA's Twilight product for further reconsideration and explanation. *Id*. at 1280-81.

In March 2023, Commerce released its draft remand results to interested parties. *See* Draft Results of Redetermination Pursuant to Court Remand (March 14, 2023) (R.P.R. 1). SMA and defendant-intervenor Cambria Company LLC timely submitted comments on the draft

2

remand results.  *See* SMA Letter, "Comments on Draft Results of Redetermination," (Mar. 22, 2023) (SMA Draft Remand Comments) (R.P.R. 2); Cambria Letter, "Comments on Draft Remand Redetermination" (Mar. 22, 2023) (R.P.R. 4).

On April 12, 2023, Commerce filed its final remand results with the Court, addressing the parties' comments.  Commerce continued to find that SMA's Twilight product is covered by the orders.  In particular, Commerce explained that the photographic exhibits that SMA submitted concerning the Twilight product fail to demonstrate that the product meets the crushed glass exclusion criteria because they only show a limited subsection of the product, and thus do not establish that Twilight includes one centimeter glass pieces within three inches of another one centimeter glass piece *across the surface of the product*.  Remand Results at 5-6.  Commerce also addressed SMA's arguments that the photos on the record are sufficient, that SMA had no basis to know to submit additional evidence, and that Commerce should have requested further information from SMA.  *Id.* at 9-13.  On May 12, 2023, SMA filed its comments brief on Commerce's final remand results with the Court.  *See* SMA Cmts., ECF No. 47.

## ARGUMENT

### I.  Standard Of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination."  *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002) (citations omitted).  Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law."  *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

**II.    Commerce's Remand Redetermination Is Supported By Substantial Evidence And Otherwise Lawful**

Commerce's application of the crushed glass exclusion in this case is reasonable and should be sustained. The exclusion's criteria require products to have pieces of glass (at least some of which are one centimeter in width at the widest cross-section, defined as a "glass piece") visible across the surface of the product, and have "glass pieces" within three inches of another "glass piece" across the surface of the product. *See* Remand Results at 4-5; Final Scope Ruling at 3. Put succinctly, for a product to meet the crushed glass exclusion criteria, interested parties must demonstrate that one centimeter "glass pieces" are within three inches of another one centimeter "glass piece" across the surface of the product. *See* Remand Results at 5.

On remand, Commerce determined that the photographic exhibits that SMA submitted concerning its Twilight product failed to demonstrate that Twilight meets these criteria. *See* Remand Results at 5. In particular, in Exhibit 16 of its scope ruling request, SMA provided photos of a portion of the Twilight product to demonstrate that there were one centimeter glass pieces within three inches of another glass piece in the product. *Id.*; SMA Scope Request at Ex. 16 (P.R. 1-2; C.R. 1-2). Commerce determined, however, that this photographic evidence failed to demonstrate that Twilight met the crushed glass exclusion criteria because "the crushed glass scope exclusion requires that there be one centimeter glass pieces within three inches of another one centimeter glass piece *across the surface of the product*." Remand Results at 6.

Commerce further explained that, because SMA only provided pictures of a subsection of the larger Twilight product, SMA did not provide evidence that the Twilight product met the "across the surface of the product" criterion of the crushed glass exclusion. *Id*. Commerce elaborated that, to demonstrate "that a product meets the plain language of the crushed glass scope exclusion, an interested party would have to provide photographic evidence of all of the

4

product's surface, and possibly multiple examples to prove that this is normally a product that meets the requirements of the exclusion." *Id*.  Although any analysis would be conducted on a case-by-case basis, such evidence may provide Commerce with a sufficient basis to determine that there are one centimeter glass pieces within three inches of another one centimeter glass piece across the surface of the product.  *Id*.

Finally, Commerce explained that its determination continues to be consistent with another scope ruling concerning crushed glass surface products.  *See* Remand Results at 6.  Specifically, Commerce stated that, in the *Panmin* scope ruling, it had also determined that the "across the surface of the product" criterion must be met for a product to be excluded from the scope.  *Id.* (citing *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: Request by Deyuan Panmin International Limited and Xiamen Deyuan Panmin Trading Co., Ltd.* (Feb. 20, 2020) (*Panmin Scope Ruling*) (Addendum A)).  In *Panmin*, Commerce determined that the merchandise at issue failed to meet the terms of the crushed glass exclusion because an examination of the pictures submitted in that case showed that "not all one centimeter 'glass pieces' are within three inches of another 'glass piece' *across the surface of the product*." *Id.* at 7 (quoting *Panmin Scope Ruling* at 5 (emphasis added in remand results)).  Therefore, on remand, Commerce determined that SMA's Twilight product is covered by the scope of the orders because SMA failed to demonstrate that the "glass pieces" in its Twilight product are within three inches of another "glass piece" across the surface of the product.  Commerce also addressed SMA's comments objecting to the agency's analysis in its draft remand results.  *See id.* at 7-13.

SMA has filed comments with the Court concerning Commerce redetermination.  *See* SMA Cmts., ECF 47.  Rather than addressing Commerce's analysis of SMA's arguments on

5

remand, however, SMA states that it "believes its comments on the Draft Remand Results sufficiently address SMA's position with respect to Commerce's Final Remand Results" and that it therefore "incorporates by reference its Comments on Draft Results of Redetermination, which it filed with Commerce on March 22, 2023." *Id.* at 1.  By failing to make any arguments to this Court, and simply incorporating its agency comments by reference, SMA has waived any objections to Commerce's remand redetermination.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001)).

Nonetheless, we address SMA's re-asserted arguments from the remand proceeding below and demonstrate that they lack merit.  Specifically, SMA asserts that: (1) there is nothing on the record to suggest that the photographs of Twilight are not representative of the entire surface of the product; (2) there is nothing in the history of the investigation, the plain language of the scope, or prior scope rulings, requiring a party to provide images of all of a product's surface; and (3) Commerce should have issued a supplemental questionnaire if additional photographs were required.  *See* SMA Draft Remand Comments at 2-4 (R.P.R. 2).  None of these arguments detracts from the reasonableness of Commerce's determination.

First, SMA's assertion that there is nothing on the record to suggest that the photographs it submitted of Twilight are not representative of the product's entire surface is unpersuasive. *See* SMA Draft Remand Comments at 2 (R.P.R. 2).  On remand, Commerce explained that "for a product to meet the criteria of the crushed glass scope exclusion, the plain language of the scope specifies that interested parties *must demonstrate* that one centimeter 'glass pieces' are within three inches of another one centimeter 'glass piece' across the surface of the product.'"  Remand

6

Results at 9 (emphasis added).  The evidence that SMA submitted (namely, the photographs in Exhibit 16) did not meet this requirement because the photographs do not demonstrate that the exclusion criteria are met "across the surface of the product." *Id*. at 9-10.  Exhibit 16 provides only an image of a subsection of the Twilight product, and SMA did not provide photographic evidence demonstrating that the entire surface of one slab of Twilight meets the exclusion's terms.  *See id.*; *see also* SMA Scope Request at Ex. 16 (P.R. 1-2; C.R. 1-2).  Thus, Commerce reasonably concluded that SMA's submission falls short of the evidence necessary to establish that its Twilight product meets the "across the surface of the product" requirement.  *See QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (burden of creating adequate record lies with interested parties rather than Commerce).

Correspondingly, this Court recognized that "Commerce may have . . . considered Twilight's glass pieces to not be sufficiently 'across the surface of the product' because the photographs may be confined to certain areas of the surface in a manner that contravenes the intent of the crushed glass exclusion."  *SMA Surfaces*, 617 F. Supp. 3d at 1280-81.  That is indeed the case.  SMA's disagreement with Commerce's analysis of the record does not show that Commerce's analysis is unreasonable.  *See Haixing Jingmei Chem. Prods. Sales Co. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018) ( "mere disagreement with Commerce's weighing of the evidence" insufficient basis to overturn Commerce determination).

Second, SMA asserts that "nothing in the history of the investigation or the plain language of the scope states that, in order to meet the definition of 'across the surface of the product,' a party would need to provide images of 'all of the product's surface' 'with all four edges and all 6 sides.'"  SMA Draft Remand Comments at 2-3 (R.P.R. 2).  SMA further alleges that Commerce is creating an "impossibly high standard" by requiring a party to provide images

7

of all of the product's surface. *Id.* at 3. As Commerce explained, however, the term "across the surface of the product" has been a part of the crushed glass exclusion since the investigation and was published with Commerce's orders. *See* Remand Results at 11; *see also Orders*, 84 Fed. Reg. at 33,055-56. SMA was thus on notice that "across the surface of the product" was part of the scope exclusion and an element it was required to establish. Further, Commerce explained the phrase "across the surface of the product" implies a broad and comprehensive examination of the product's surface. *See* Remand Results at 11. Consequently, Commerce reasonably determined that the plain language of the orders requires Commerce to review the product's entire surface, and an interested party like SMA to provide photographic evidence demonstrating that all of the product's surface meets the exclusion's terms. *Id.*

Accordingly, it was reasonable for Commerce to find that the select portions of the Twilight product for which SMA provided images and/or documentation are insufficient to meet the "across the surface of the product" requirement. As Commerce observed, producers of the subject merchandise would otherwise be able to manipulate the record through the use of select images to argue that exclusion is warranted. *See id.* SMA's argument thus runs counter to the history of this proceeding, including the investigation, as well as to the orders' plain language, indicating that a party would need to provide images demonstrating that a product's entire surface meets the exclusion terms.

Relatedly, Commerce addressed SMA's argument that the *Panmin* scope ruling did not provide an explanation or standard for what types of photographs and evidentiary standard needed to be met. *See* Remand Results at 11-12; SMA Draft Remand Comments at 3 (R.P.R. 2). As an initial matter, this argument does not undermine Commerce's interpretation of the scope exclusion language, given that Commerce's interpretation flows directly from the crushed glass

exclusion's plain language. *See* Remand Results at 11. Further, in *Panmin*, Commerce specifically stated that the photographs provided in that case were not sufficient to meet the crushed glass exclusion's requirements, noting that the photographs they did not demonstrate that all one centimeter glass pieces were within three inches of another glass piece across the surface of the product. *See id.* at 11-12; *Panmin* at 5 (Addendum A). SMA's argument based on the *Panmin* ruling thus lacks merit.

Finally, SMA argues that Commerce should have issued a supplemental questionnaire if it required additional photographs. *See* SMA Draft Remand Comments at 3 (R.P.R. 2). The burden of creating an adequate record lies with interested parties, and not with Commerce. *See QVD Food*, 658 F.3d at 1324 ("Although Commerce has authority to place documents in the administrative record that it deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce." (cleaned up and citations omitted)); *Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The burden of production should belong to the party in possession of the necessary information." (citation omitted)).

Here, Commerce reviewed the totality of the evidence that SMA provided concerning the Twilight product, including the photographs in Exhibit 16. *See* Remand Results at 9-10. The photographs SMA provided are images of subsections of a larger slab and do not provide a comprehensive collection of images demonstrating that the entire surface of the Twilight product meets the terms of the exclusion. *See id*. at 10, 12-13; SMA Scope Request at Ex. 16 (P.R. 1-2; C.R. 1-2). In this context, Commerce was not required to issue a supplemental questionnaire to SMA because the burden falls on SMA to build a record in support of its scope ruling request. *Cf. SMA Surfaces*, 617 F. Supp. 3d at 1280 ("Without any other statute or regulation obligating Commerce to ask for additional evidence before a final determination, the burden of developing

9

an adequate record falls on SMA Surfaces, not Commerce." (citation omitted)).  Therefore, Commerce reasonably continued to find that the record evidence fails to demonstrate that SMA's Twilight product meets the terms of the crushed glass exclusion.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment in favor of the United States.

    Respectfully submitted,

    BRIAN M. BOYNTON
    Principal Deputy Assistant Attorney General

    PATRICIA M. McCARTHY
    Director

    /s/ Tara K. Hogan
    TARA K. HOAGN
    Assistant Director

OF COUNSEL:
JARED CYNAMON
Attorney
U.S. Department of Commerce
Office of the Chief Counsel
for Trade Enforcement and Compliance
Washington, D.C. 20230

    /s/ Joshua E. Kurland
    JOSHUA E. KURLAND
    Trial Attorney
    United States Department of Justice
    Civil Division
    Commercial Litigation Branch
    P.O. Box 480
    Ben Franklin Station
    Washington, D.C. 20044
    Tel: (202) 616-0477
    Email: Joshua.E.Kurland@usdoj.gov

June 12, 2023      *Attorneys for Defendant United States*

# Addendum A

<!-- Department of Commerce letterhead -->

A-570-084
C-570-085
Scope Inquiry (Panmin ZZ Glass)
Public Document
AD/CVD OII: AKM

February 20, 2020

| | |
|---|---|
| **MEMORANDUM TO:** | James Maeder<br>Deputy Assistant Secretary<br>  for Antidumping and Countervailing Duty Operations |
| **FROM:** | Melissa G. Skinner<br>Office Director<br>AD/CVD Operations, Office II |
| **SUBJECT:** | Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Quartz Surface Products from the People's Republic of China: Request by Deyuan Panmin International Limited and Xiamen Deyuan Panmin Trading Co., Ltd. (Collectively, Panmin) |

## SUMMARY

In accordance with 19 CFR 351.225(d) and 19 CFR 351.225(k)(1), we recommend determining that Panmin's "ZZ" series glass products are covered by the scope of the antidumping (AD) and countervailing duty (CVD) orders on quartz surface products (quartz) from the People's Republic of China (China).[1]  A summary of Panmin's request and Commerce's analysis are presented below.

## BACKGROUND

On January 7, 2020, Commerce received a scope ruling request from Panmin, an exporter of the subject merchandise from China.[2]  In its request, Panmin stated that Commerce should find that three of its "ZZ" series glass products (*i.e.*, ZZ3003, ZZ7119, and ZZ7027) are excluded from the scope of the *Orders* because they meet the terms of the crushed glass exclusion.  Specifically,

---

[1] *See Certain Quartz Surface Products from the People's Republic of China:  Antidumping and Countervailing Duty Orders*, 84 FR 33053 (July 11, 2019) (*Orders*).
[2] Panmin previously filed a request for a ruling on these products on October 18, 2019.  *See* Panmin's Letter," Quartz Surface Products from the People's Republic of China – Scope Ruling Request Regarding Certain Slabs Made Predominantly with Crushed Glass," dated October 18, 2019.  On November 22, 2019, Commerce rejected this scope ruling because Panmin did not provide information specific to each type of "ZZ" glass product that addresses the four criteria listed in the scope exclusion.  *See* Commerce's Letter, "Certain Quartz Surface Products from the People's Republic of China:  Scope Ruling Request on Panmin ZZ Glass," dated November 22, 2019, at 2.



according to Panmin, these products are made predominantly of glass and contain pieces of glass of various sizes across the surface of the product, with no more than three inches between them.[3]

On January 21, 2020, the petitioner[4] submitted comments opposing Panmin's request.[5] The petitioner asserts that Panmin misunderstands the scope, noting that the crushed glass exclusion defines as a "glass piece" pieces of glass that are larger than one centimeter at their widest section. According to the petitioner, the crushed glass exclusion language then specifies that it is these one-centimeter glass pieces which must be within three inches of another "glass piece." As a result, the petitioner states that both Panmin's description and the photos it provided of its "ZZ" series glass products make clear that they do not meet the terms of the crushed glass exclusion.

### SCOPE OF THE *ORDERS*

The *Orders*[6] describe the scope as follows:

The merchandise covered by these orders is certain quartz surface products.[7] Quartz surface products consist of slabs and other surfaces created from a mixture of materials that includes predominately silica (*e.g.*, quartz, quartz powder, cristobalite) as well as a resin binder (*e.g.*, an unsaturated polyester). The incorporation of other materials, including, but not limited to, pigments, cement, or other additives does not remove the merchandise from the scope of the investigation. However, the scope of these orders only includes products where the silica content is greater than any other single material, by actual weight. Quartz surface products are typically sold as rectangular slabs with a total surface area of approximately 45 to 60 square feet and a nominal thickness of one, two, or three centimeters. However, the scope of these orders includes surface products of all other sizes, thicknesses, and shapes. In addition to slabs, the scope of these orders includes, but is not limited to, other surfaces such as countertops, backsplashes, vanity tops, bar tops, work tops, tabletops, flooring, wall facing, shower surrounds, fire place surrounds, mantels, and tiles. Certain quartz surface products are covered by the orders whether polished or unpolished, cut or uncut, fabricated or not fabricated, cured or uncured, edged or not edged, finished or unfinished, thermoformed or not thermoformed, packaged or unpackaged, and regardless of the type of surface finish.

In addition, quartz surface products are covered by the orders whether or not they are imported attached to, or in conjunction with, non-subject merchandise such as sinks, sink bowls, vanities, cabinets, and furniture. If quartz surface products are imported attached to, or in conjunction with, such non-subject merchandise, only the quartz surface product is covered by the scope.

---

[3] *See* Panmin's Letter, "Quartz Surface Products from the People's Republic of China – Scope Ruling Request Regarding Certain Slabs Made Predominantly with Crushed Glass – Resubmission of Scope Request and Response to Commerce' Questions of November 22, 2019," (Scope Ruling Request), dated January 7, 2020.
[4] The petitioner is Cambria Company LLC.
[5] *See* Petitioner's Letter, "Quartz Surface Products from the People's Republic of China: Response to Scope Ruling Request by Panmin," (Petitioner's Response) dated January 21, 2020.
[6] *See Orders*, 84 FR at 33055.
[7] Quartz surface products may also generally be referred to as engineered stone or quartz, artificial stone or quartz, agglomerated stone or quartz, synthetic stone or quartz, processed stone or quartz, manufactured stone or quartz, and Bretonstone®.

Subject merchandise includes material matching the above description that has been finished, packaged, or otherwise fabricated in a third country, including by cutting, polishing, curing, edging, thermoforming, attaching to, or packaging with another product, or any other finishing, packaging, or fabrication that would not otherwise remove the merchandise from the scope of the orders if performed in the country of manufacture of the quartz surface products.

The scope of the orders does not cover quarried stone surface products, such as granite, marble, soapstone, or quartzite. Specifically excluded from the scope of the orders are crushed glass surface products. Crushed glass surface products must meet each of the following criteria to qualify for this exclusion: (1) the crushed glass content is greater than any other single material, by actual weight; (2) there are pieces of crushed glass visible across the surface of the product; (3) at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide as measured at their widest cross-section (glass pieces); and (4) the distance between any single glass piece and the closest separate glass piece does not exceed three inches.

The products subject to the scope are currently classified in the Harmonized Tariff Schedule of the United States (HTSUS) under the following subheading: 6810.99.0010. Subject merchandise may also enter under subheadings 6810.11.0010, 6810.11.0070, 6810.19.1200, 6810.19.1400, 6810.19.5000, 6810.91.0000, 6810.99.0080, 6815.99.4070, 2506.10.0010, 2506.10.0050, 2506.20.0010, 2506.20.0080, and 7016.90.10. The HTSUS subheadings set forth above are provided for convenience and U.S. Customs purposes only. The written description of the scope is dispositive.

**LEGAL FRAMEWORK**

When a request for a scope ruling is filed, Commerce examines the scope language of the order{s} at issue and the description of the product contained in the scope ruling request.[8] Pursuant to Commerce's regulations, Commerce may also examine other information, including the description of the merchandise contained in the petition, the records from the investigations, and prior scope determinations made for the same product.[9] If Commerce determines that these sources are sufficient to decide the matter, it will issue a final scope ruling as to whether the merchandise is covered by an order.[10]

Conversely, where the descriptions of the merchandise in the sources described in 19 CFR 351.225(k)(1) are not dispositive, Commerce will consider the five additional factors set forth at 19 CFR 351.225(k)(2). These factors are: (i) the physical characteristics of the merchandise; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in which the product is advertised and displayed. The determination as to which analytical framework is most appropriate in any given scope proceeding is made on a case-by-case basis after consideration of all evidence before Commerce.

---

[8] *See Walgreen Co. v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010).
[9] See 19 CFR 351.225(k)(1).
[10] See 19 CFR 351.225(d).

**INTERESTED PARTY COMMENTS**

Panmin

According to Panmin, its "ZZ" series glass products are not subject to the *Orders*, because they meet the terms of the crushed glass exclusion, as follows:  (1) the crushed glass content is greater than any other single material, by actual weight; (2) there are pieces of crushed glass visible across the surface of the products; (3) at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide, as measured at their widest cross section; and (4) the distance between any single piece of glass and the closest separate piece of glass does not exceed three inches.[11]

To support its position, Panmin provided tests demonstrating that crushed glass is the predominant material, by actual weight, in its three "ZZ" series glass products.[12]  Panmin contends that its products meet the crushed glass exclusion because they contain pieces of crushed glass of many sizes, and that, according to the exclusionary language in the scope of the *Orders*, these pieces of glass may be of any size as long as they are within three inches of each other.[13]  Panmin provided photos of the three "ZZ" series glass products for which it is requesting the scope ruling to demonstrate that all glass pieces of various sizes are within three inches of another glass piece.

The Petitioner

The petitioner argues that Panmin has failed to establish that its "ZZ" series glass products fall outside of the plain language of the scope.  As an initial matter, the petitioner asserts that Panmin misunderstands the language of the crushed glass exclusion in the scope.  According to the petitioner, reading the crushed glass exclusion in the manner Panmin does would negate the "fix" Commerce made to the scope of the *Orders* during the investigations.  The petitioner notes that the plain language of the scope of the *Orders* contradicts Panmin's interpretation of the crushed glass exclusion because the exclusion defines a "glass piece" as a piece of glass that is larger than one centimeter wide at its widest cross section and specifies that it is these "glass pieces" that must be within three inches of each other.[14]  Thus, the petitioner states that Panmin's claim that the crushed glass exclusion in the scope references glass pieces of any size is a clear misinterpretation of the scope.

Furthermore, the petitioner states that the photographs Panmin submitted demonstrate that its products do not meet the crushed glass exclusion, because the products are indistinguishable from subject quartz products.  According to the petitioner, while the "ZZ" series glass products

---

[11] *Id*. at 2 and Exhibit Sa-1.
[12] *Id*. at Exhibits SA-2a, SA-3a, SA-3g.
[13] *Id*. at Exhibits SA-1 – SA-2g and Exhibits SA-3b – SA-3g.
[14] *Id*. at 7 (citing Memorandum, "Certain Quartz Surface Products from the People's Republic of China: Scope Modification Determination," dated May 14, 2019 (Scope Modification Memorandum), at 12).

4

contain one centimeter "glass pieces," as defined by the scope, there are large portions of the slabs that do not have any "glass pieces" visible.

**COMMERCE'S POSITION**

Information Panmin provided demonstrates the three "ZZ" series glass products for which it is requesting an exclusion (*i.e.*, ZZ3003, ZZ7119, and ZZ7027) are within the scope of the *Orders*. We find that the language in the scope of the *Orders* is dispositive with regard to these products. Specifically, the language of the scope of the *Orders* makes clear that, for a product to meet the terms of the crushed glass exclusion, the crushed glass content must be greater than any other single material, by actual weight.[15] There must also be glass pieces, at least some of which are larger than one centimeter (defined in the language of the scope as a "glass piece") visible across the surface of the product.[16] The photographs Panmin submitted indicate that there are small pieces of glass scattered across the surface of its products and that the products contain one centimeter "glass pieces," as defined by the exclusion language in the scope of the *Orders*. Moreover, the scope specifies that the distance between any single "glass piece" and the closest separate "glass piece" may not exceed three inches.[17] However, an examination of the pictures of the three "ZZ" series glass products shows that they do not meet the crushed glass scope exclusion, because not all one centimeter "glass pieces" are within three inches of another "glass piece" across the surface of the product.[18]

In addition to the plain language of the scope of the *Orders*, we examined the other information enumerated under 19 CFR 351.225(k)(1), including the description of the merchandise contained in the Petitions, the record from the investigations, and the final report of the International Trade Commission, and find that none of these sources undermine our analysis. Tellingly, Panmin itself did not cite to any of these sources under 19 CFR 351.225(k)(1) in support of its request that Commerce find its merchandise outside the scope.

Therefore, based on the analysis set forth above, we find, in accordance with 19 CFR 351.225(k)(1), that Panmin's "ZZ" series glass products (*i.e.*, ZZ3003, ZZ7119, and ZZ7027) are within the scope of the *Orders*. Because our analysis is dispositive on the issue of whether the products in Panmin's scope ruling request are within the scope of the *Orders*, we find it unnecessary to consider the additional factors under 19 CFR 351.225(k)(2).

**RECOMMENDATION**

For the reasons discussed above, in accordance with 19 CFR 351.225(k)(1), we recommend that Commerce find that Panmin's "ZZ" series glass products (*i.e.*, ZZ3003, ZZ7119, and ZZ7027) are within the scope of the *Orders*. If the recommendation in this memorandum is accepted, we

---

[15] *See Orders*, 84 FR at 33055.
[16] *Id.*
[17] *Id.*
[18] *See* Scope Ruling Request at Exhibits SA-1 – SA-2g and Exhibits SA-3b – SA-3g.

5

Barcode:3945760-01 A-570-084 SCO - Scope Inquiry  -  Panmin ZZ glass

will serve a copy of this determination to all interested parties on the scope service list, as directed by 19 CFR 351.225(d).

☒                                ☐
_____                 _____
Agree                             Disagree

2/20/2020

X *James Maeder*

Signed by: JAMES MAEDER

James Maeder
Deputy Assistant Secretary
 for Antidumping and Countervailing Duty Operations

6

Filed By: Ajay Menon, Filed Date: 2/21/20 1:10 PM, Submission Status: Approved

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation set forth in the Court's Standard Chambers Procedures and contains approximately 2,758 words, excluding parts of the brief exempted from such word limitations.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Joshua E. Kurland